**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**No. 7:26-cv-253**

| | | |
|---|---|---|
| PHILIP ROESEL,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>**JURY DEMAND** |

Philip Roesel ("Roesel" or "Plaintiff"), by and through the undersigned counsel, files this Complaint against Defendant Blue Cross and Blue Shield of South Carolina ("BCBSSC" or "Defendant") and states:

## NATURE OF THE ACTION

1. This is an action to obtain redress for BCBSSC's failure to pay Roesel for his work, as a General Agency (hereinafter an "Agency"), to solicit consumers to submit applications for health insurance policies offered by BCBSSC.

2. BCBSSC is an insurance company that offers health insurance policies to consumers, including qualified health plans ("QHPs") under the Affordable Care Act ("ACA").

3. To market and sell its QHPs, BCBSSC partners with Agencies, such as Roesel. Agencies employ Agent–Brokers ("Agents")—individuals authorized by the federal government to assist consumers in the process of applying for QHPs—to solicit and procure applicants for BCBSSC's qualified health plans.

4. Roesel entered into an Agency Agreement with BCBSSC and had the reasonable expectation of being paid commissions by BCBSSC for his direct and indirect services, as an Agency, to procure applicants for QHPs.

5. Roesel, together with the other Agents working for him as Agency, procured many applications for the QHPs sold by BCBSSC, resulting in a substantial benefit to BCBSSC in the form of premium payments and federal subsidies.

6. In January 2024, BCBSSC stopped paying the commissions it owed to Roesel for the premiums and subsidies resulting from work he and his Agents had already done.

7. BCBSSC told Roesel that it had stopped the payments because a federal agency had purportedly terminated Roesel's authority to serve as an Agent and had placed him on a list of terminated Agents (the "Registration Termination List" or "RTL").

8. When Roesel informed BCBSSC that he was actively challenging the federal agency's purported termination, BCBSSC replied that it would pay the commissions owed if the challenge resolved in Roesel's favor.

9. The challenge ultimately resolved in Roesel's favor. After Roesel filed an Administrative Procedure Act ("APA") action in this Court challenging the validity of his purported termination as Agent, the federal agency (a) rescinded Roesel's termination *ab initio*, and (b) informed BCBSSC that the *ab initio* rescission meant that an Agent's temporary appearance on the Registration Termination List was not grounds to refuse paying commissions.

10. To date, however, BCBSSC still refuses to pay Roesel for the work he and his Agents have already done. BCBSSC has withheld millions of dollars in commission payments from Roesel without justification, even as it continues to benefit from the tens of millions of dollars of revenue that it continues to receive because of Roesel's efforts.

11. Through this action, Roesel seeks damages for BCBSSC's breaches of the Agency Agreement and its violation of the North Carolina Sales Representative Commissions Act (the "Commissions Act"). He also seeks declarations that the Agency Agreement does not permit BCBSSC to cease paying for work that has already been performed. In the alternative, Roesel seeks both (a) a declaration that the Agency Agreement is illusory and (b) damages under unjust enrichment and quantum meruit theories. Finally, Roesel seeks damages for BCBSSC's violations of the Unfair or Deceptive Trade Practices Act and the Unfair Trade Practices Act.

## **JURISDICTION AND VENUE**

12. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332(a) (Diversity). Plaintiff's a citizen of North Carolina. BCBSSC is a citizen of South Carolina. The amount in controversy exceeds $75,000.

13. Venue over this action lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Roesel's claims occurred in the Eastern District of North Carolina. At all times relevant to this action, Roesel resided in Wilmington, North Carolina, a city located in this District, and solicited applications for BCBSSC while in this District. At the time it entered into the Agency Agreement and began its partnership with Roesel, BCBSSC knew or should have known that Roesel would do his work in this District, and it intended for him to do so. Prior to its suspension of commission payments, BCBSSC also made payments to Roesel in this District. BCBSSC regularly communicated with Roesel about the Agency Agreement and related matters while he was in this District, including its communications about the suspension of commission payments to Roesel. Accordingly, venue in this Court is proper.

14. This Court has jurisdiction over the parties, including specific personal jurisdiction over BCBSSC, under the United States Constitution, North Carolina's long-arm statute, and the Commission Act. *See, e.g.*, N.C. Gen. Stat. §§ 1-75.4(2), (5), and (10); N.C. Gen. Stat. § 66-192(c). At all times relevant to this action, BCBSSC purposefully availed itself of the laws and benefits of the State of North Carolina, including through its years-long business relationship with Roesel, who it knew or should have known would do his work in this State. BCBSSC further purposefully availed itself through the years-long payment of commissions into this State, which occurred prior to its wrongful suspension of such payments, and its continued communications with Roesel into this State. BCBSSC additionally purposefully availed itself through its knowing receipt of the benefits conferred by Roesel, a State resident, who, through himself and as Agency, secured applicants for the benefit of BCBSSC while he was located in this State.

## PARTIES

15. Plaintiff Philip Roesel is a resident of Wilmington, North Carolina, a city located in New Hanover County. Roesel is an Agent and was assigned National Producer Number ("NPN") 2373701 by the National Insurance Producer Registry. In his role as Agent, Roesel is authorized to solicit QHPs (such as those offered by BCBSSC) and to work as an Agency that utilizes other Agents to solicit QHPs.

16. Defendant Blue Cross and Blue Shield of South Carolina is a mutual insurance corporation organized under the laws of South Carolina, with its headquarters in Columbia, South Carolina. Among other products, BCBSSC sells QHPs to consumers. Upon information and belief, once BCBSSC accepts a QHP application, it typically receives premium payments directly from the applicant and, for an applicant who qualifies for financial assistance under the ACA, BCBSSC

receives all or a portion of the premium payment directly from the federal government via Advance Premium Tax Credits (hereinafter referred to as "federal subsidies").

## STATEMENT OF FACTS

### I. General Background.

17. Congress passed the ACA to increase the number of Americans with health insurance. The program is administered, in large part, by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health and Human Services ("HHS").

18. Under the ACA, QHPs are a specific kind of health insurance plan that may be subsidized by the federal government.

19. In order to assist consumers in finding and applying for QHPs, the ACA provides for the creation of Individual Market Federally-Facilitated Exchanges ("FFEs") and State-Based Exchanges on the Federal Platform ("SBE-FPs") (collectively, "Exchange" or "Exchanges"), in which eligible consumers can shop for QHPs offered by various insurance companies.

20. The ACA also requires the HHS Secretary to "establish procedures under which a State may allow [Agents] . . . to enroll individuals . . . in any [QHPs] in the individual . . . market" and "to assist individuals in applying for [federal subsidies] for plans sold through an Exchange." 42 U.S.C. § 18032(e); see also 45 C.F.R. § 155.220 (the "Agent Regulation").

21. Under the Agent Regulation, CMS requires all prospective agents to meet certain requirements and to enter into CMS Exchange Agreements, or Marketplace Agreements, on an annual basis before being authorized by CMS to serve as an Agent. Each year in which an Agent is authorized to participate in the Exchanges is referred to as a "Plan Year" by CMS.

22. To administer the ACA and the Exchanges, CMS maintains the Registration Termination List, which lists the NPNs of Agents whose authority to assist consumers in the Exchanges has been suspended or terminated by CMS.[1]

23. BCBSSC, like other insurance companies, pays Agencies to solicit consumer applications for its QHPs. Agencies, in turn, employ a group of Agents to complete the work.

## II. Plaintiff's Placement and Rescission from the RTL, BCBSSC's Representations.

### A. Actions by CMS and the Rescission of the Suspension/Termination Decision.

24. Roesel has served for over a decade as an Agent. In this profession, Roesel has helped tens of thousands of consumers apply for and receive health insurance benefits through QHPs. Roesel, serving as Agency, has also utilized other Agents to solicit and procure QHPs on behalf of insurance companies.

25. On October 26, 2023, CMS provided Roesel a notice of purported suspension, titled Notice of Immediate Suspension of Plan Year ("PY") 2023 Exchange Agreements (the "Suspension Letter"), stating that CMS was purportedly suspending Roesel's PY 2023 Agreements for 90 calendar days and that it would determine whether to terminate his status as Agent. As a result, CMS placed Roesel on the Registration Termination List on or around October 26, 2023.

26. Roesel disputed CMS's Suspension Letter and responded to the Suspension Letter rebutting the alleged bases. Nonetheless, CMS sent Roesel with a Notice of Termination dated December 6, 2023, purportedly terminating his authorization to participate as an Agent in the Exchanges.

---

[1] *See* AB Suspension and Termination List, CMS, https://data.healthcare.gov/dataset/e8uy-7rnp (last visited March 17, 2026).

27. Roesel timely requested reconsideration of CMS's Suspension and Termination decisions pursuant to the regulatory process laid out in the Agent Regulation.

28. On March 4, 2024, CMS denied Roesel's Request for Reconsideration.

29. On May 10, 2024, Roesel filed suit against CMS, HHS, and other Defendants (the "CMS Defendants") under the APA in this district, alleging that the Suspension and Termination decisions were improper and requesting that the final agency decision be overturned. *See Roesel v. HHS et al.*, Case No. 7:24-cv-409-FL (the "APA Litigation").

30. In March 2025, as a result of a settlement between Roesel and the CMS Defendants in the APA Litigation, CMS rescinded its purported suspension and termination of Roesel. *See APA Litigation Settlement Agreement* (attached as **Exhibit 1**). As noted in the Settlement Agreement, the suspension and termination decisions were "rescinded *ab initio*" and Roesel's "suspension and termination [were] deemed to be void." *Id.* at 4, ¶ 2.

31. In March 2025, CMS also provided Roesel with a letter titled "Rescission of Notice of Immediate Suspension of Plan Year (PY) 2023 Exchange Agreements and Reinstatement of These Agreements." *CMS Rescission Letter* (attached as **Exhibit 2**). This CMS Rescission Letter noted that Roesel would "be removed from the Registration Termination List (RTL)." *Id.*

32. On June 13, 2025, CMS published a document entitled "Frequently Asked Questions: National Producer Numbers (NPNs) Rescinded on the Agent/Broker Suspension and Termination List" (the "Guidance", attached as **Exhibit 3**). Upon information and belief, the Guidance was made available to all insurance companies selling QHPs, including BCBSSC.

33. The Guidance provided that:

A. All Agents who had their suspensions and terminations rescinded had been reinstated, effective on the original suspension or termination date, as if the suspension and termination had never occurred;

B. Insurance companies may compensate Agents for premiums and subsidies received as a result of an Agent's efforts, including premiums and subsidies for passive renewals, as if the CMS suspension or termination never occurred; and

C. If an insurance company had refused to pay commission payments because of the rescinded suspension or termination or the Agent's inability to complete annual training and registration requirements during the pendency of the rescinded suspension or termination, then "CMS's rescission of the suspension or termination removes [those] ground[s] for nonpayment."

**B. Actions and Representations of BCBSSC, and BCBSSC's Refusal to Pay Commissions.**

34. On or around September of 2013, Roesel began serving as an Agency for BCBSSC, soliciting applications for QHPs on behalf of BCBSSC, and utilizing Agents to solicit QHP applications for BCBSSC, with the expectation that BCBSSC would, in return, compensate Roesel in the form of commission payments.

35. BCBSSC represented to Roesel in writing and through its course of conduct that it would compensate Roesel in connection with his solicitation of QHP applications.

36. BCBSSC also induced Roesel to solicit and procure QHP applications, and to utilize Agents to do so for his Agency, by entering into an Agency Agreement (attached as **<u>Exhibit 4</u>**) that refers to commission payments Roesel was to receive as a result of successful QHP applications.

37. BCBSSC and Roesel also entered into a separate Agent Agreement.

38. The Agency Agreement incorporated Commission Schedules prepared by BCBSSC. The Commission Schedules detail the commissions that Roesel would receive from future premiums and subsidies received by BCBSSC for each QHP that BCBSSC sold as a result of an application originated by Roesel and his Agents.

39. Prior to BCBSSC's suspension of commission payments, Roesel and BCBSSC had a strong business relationship with one another, with Roesel and his Agents procuring thousands of consumers for BCBSSC.

40. After Roesel was placed on the Registration Termination List, Roesel proposed to BCBSSC that a different Agency should take over for him during the pendency of his challenge to the purported suspension by CMS. BCBSSC did not substantively respond to the proposal.

41. In mid-December 2023, with knowledge of Roesel's purported suspension and termination by CMS, BCBSSC encouraged Roesel and his Agents to continue submitting applications.

42. On January 30, 2024, BCBSSC sent Roesel a letter that stated it "ha[d] suspended [Roesel's] commission payments effective January 1, 2024." See BCBSSC Letter dated January 30, 2024 (attached as **Exhibit 5**).

43. As noted in the BCBSSC Letter to Roesel, the sole basis for the suspension of his commission payments was [Roesel's] "appearance on the Federally-Facilitated Marketplace ('FFM') Registration Termination List as 'suspended or terminated' pursuant to 45 C.F.R. § 155.220(f)-(m)."

44. In February 2024, after receiving the BCBSSC Letter, Roesel reminded BCBSSC multiple times that he was disputing CMS's purported suspension and termination decisions and that he intended to seek judicial review if CMS did not grant his request for reconsideration. One

BCBSSC representative responded that she hoped the judicial challenge "goes in [Roesel's] favor."

45. On February 12, 2024, Defendant's Director of Sales Operations & Training responded to Roesel's notice that Roesel was challenging the purported suspension and termination. *See* BCBSSC Email to Roesel dated February 12, 2024 (attached as **Exhibit 6**). In that email, Defendant stated: "Our hope is that this [*i.e.*, Roesel's appearance on the Registration Termination List] is resolved soon, and should it be resolved in [Roesel's] favor, ***any commissions owed will be paid accordingly***." *Id.* (emphasis added).

46. During the course of the APA Litigation filed in May 2024, Roesel informed BCBSSC of the ongoing APA Litigation and that he disputed his appearance on the Registration Termination List.

47. In July 2024, BCBSSC terminated the appointment with the State of South Carolina that allowed Roesel to serve as an insurance agent for BCBSSC.

48. In March 2025, after the APA Litigation was resolved, and after CMS rescinded its decision to place Roesel on the Registration Termination List *ab initio*, and after the issue of Roesel's placement on the Registration Termination List had resolved in his favor, Roesel notified BCBSSC and requested to be paid the commissions owed to him.

49. BCBSSC refused to pay the commissions owed to Roesel. BCBSSC claimed that (a) Roesel's temporary appearance on the Registration Termination List during the pendency of his challenge provided cause to terminate the commissions, and (b) BCBSSC had a contractual right under the Agent Agreement to terminate the commission payments with or without cause.

50. On February 6, 2026, Roesel sent a written demand by certified mail to BCBSSC for payment of the commissions then due. BCBSSC did not respond to the written demand.

51. Roesel's temporary placement on the Registration Termination List during the pendency of his challenge to CMS's actions did not justify BCBSSC's termination of commission payments to Roesel for work he had already done, nor did it have any bearing on the amount of benefits BCBSSC received from the work Roesel and his Agents had done to solicit and procure QHPs. BCBSSC continued to receive the premium payments and federal subsidies resulting from the QHP applicants whom Roesel and his Agents solicited and procured for BCBSSC, regardless of Roesel's temporary appearance on the Registration Termination List.

52. Any contractual provisions purportedly allowing BCBSSC to cease making commission payments to Roesel for already-performed work are void, unenforceable, and contrary to public policy. In addition, the implied covenant of good faith and fair dealing prohibits BCBSSC from unilaterally terminating its own contractual obligations after Roesel had already performed his obligations.

53. BCBSSC's refusal to pay commissions to Roesel directly contravenes the Guidance, which advises that a former, but now-rescinded, placement on the Registration Termination List cannot serve as grounds for nonpayment of commissions.

54. Unlike BCBSSC, other insurance companies for whom Roesel and his Agents have solicited and procured QHP applicants have paid Roesel the commissions owed to him without issue, recognizing the validity of CMS's *ab initio* rescission decision and complying with CMS's written guidance.

55. To date, BCBSSC has failed to compensate Roesel for commission payments in excess of four million dollars ($4,000,000.00) and has received premiums and subsidies resulting from Roesel's work in excess of ten million dollars ($10,000,000.00) without providing him any compensation.

## CLAIMS FOR RELIEF

### COUNT ONE
### Relief Under N.C. Gen. Stat. §§ 66-191 and 66-192

56. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

57. N.C. Gen. Stat. §§ 66-191 and 66-192 provide Roesel with a private right of action in connection with unpaid commissions.

58. Under N.C. Gen. Stat. § 66-190, BCBSSC qualifies as a "principal," Roesel qualifies as a "sales representative[,]" and the unpaid commissions at issue qualify as "commissions" as defined in the statute.

59. BCBSSC has failed to comply with N.C. Gen. Stat. § 66-191, which requires BCBSSC to pay commissions owed to Roesel even upon termination of any agency relationship with Roesel. Specifically, the statute requires that "the principal shall pay the sales representative all commissions due under the contract within 30 days after the effective date of the termination and all commissions that become due after the effective date of termination within 15 days after they become due."

60. BCBSSC did not respond in writing to Roesel's written demand for the payment of unpaid commissions, which demand was sent by certified mail.

61. To date, BCBSSC has failed to pay the commissions due under the Agency Agreement with Roesel, in violation of N.C. Gen. Stat. § 66-191.

62. Roesel seeks monetary damages pursuant to N.C. Gen. Stat. § 66-192, including all amounts due to Roesel under the Agency Agreement, exemplary damages in an amount two times the value of the commissions due, attorneys' fees, and court costs.

## COUNT TWO
**Breach of Contract**

63. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

64. The Agency Agreement between BCBSSC and Roesel is a binding contract, and all conditions precedent have been met for its enforcement.

65. Roesel has complied with all of the terms and conditions of the Agency Agreement.

66. The Commission Schedules between BCBSSC and Roesel are binding contracts, all conditions precedent have been met for their enforcement, and Roesel has complied with all of the terms and conditions required to receive payment under the Commission Schedules.

67. BCBSSC breached its Agency Agreement with Roesel by failing to pay commissions due to Roesel. These breaches include:

A. Section VIII: Compensation § 1, which states that the Agency "shall" receive commissions (as defined in the Commission Schedules) in accordance with the terms and conditions of the Commission Schedules; and

B. The Commission Schedule(s) applicable to the relevant time period, which set forth the terms and amounts of commissions owed by BCBSSC for each approved QHP application, irrespective of an agent's appearance on the RTL;

68. As a direct and proximate result of BCBSSC's breach of its Agency Agreement, Roesel is entitled to damages for breach of contract in an amount to be determined at trial.

## COUNT THREE
**Declaratory Judgment Regarding Future Commissions**

69. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

70. As set forth throughout the Complaint, an actual controversy exists between BCBSSC and Roesel regarding whether BCBSSC is wrongfully withholding commission payments owed to Roesel as they become due.

71. The Court possesses jurisdiction over the parties and the claims set forth in this Complaint.

72. The Court will not abuse its discretion in issuing a declaratory judgment in this action. A declaratory judgment regarding the commission payments and/or the agreements will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

73. BCBSSC will continue to incur future obligations to Roesel under the Agency Agreement as it receives future premiums and subsidies for QHP policies and renewals of QHP policies that were originally procured by Roesel and his Agents.

74. Upon information and belief, BCBSSC will continue to refuse payment of commissions on these future premiums and subsidies based on its improper interpretation and application of the Agency Agreement.

75. Roesel requests that the Court issue an order and judgment declaring that Roesel is entitled to continuing commissions from BCBSSC for QHP policies and renewals that were procured by Roesel and his Agents.

## <u>COUNT FOUR</u>
## Declaratory Judgment
## That BCBSSC May Not Terminate Its Obligation to Pay Commissions

76. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

77. As set forth throughout the Complaint, an actual controversy exists between BCBSSC and Roesel regarding whether BCBSSC may unilaterally terminate its obligations to pay commissions for work Roesel and his Agents have already done.

78. The Court possesses jurisdiction over the parties and the claims set forth in this Complaint.

79. The Court will not abuse its discretion in issuing a declaratory judgment in this action. A declaratory judgment that BCBSSC cannot unilaterally terminate its obligations to pay commissions would serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

80. Upon information and belief, BCBSSC contends that either (a) CMS's rescinded suspension and termination of Roesel provides good cause for it to cease paying commissions for work Roesel and his Agents have already performed or (b) BCBSSC may unilaterally terminate its obligation to pay commissions for work Roesel and his Agents have already performed.

81. Neither the language of the Agency Agreement nor the language of the Agent Agreement authorizes BCBSSC to cease paying commissions for work that Roesel and his Agents have already done.

82. Regardless of the terms of the Agency Agreement, the Agent Agreement, or any other contracts between the parties, the implied covenant of good faith and fair dealing prevents BCBSSC from terminating its own obligations to pay commissions for work Roesel and his Agents had already performed under the Agency Agreement.

83. Any contractual provisions purportedly allowing BCBSSC to terminate its payment obligations are void as a matter of law. The Commissions Act expressly provides: "A provision in

any contract between a sales representative and a principal purporting to waive any provision of this Article, whether by expressed waiver or by a contract subject to the laws of another state, is void." N.C. Gen. Stat. § 66-193; see also N.C. Gen. Stat. § 66-191 (requiring the principal to pay commissions even after termination of the contract).

84. Roesel requests that the Court issue an order and judgment declaring that no enforceable contractual provision permits BCBSSC to withhold commission payments for work Roesel and his Agents have already done.

**COUNT FIVE**
**In the alternative: Declaratory Judgment**
**That the Agency Agreement and Agent Agreement Are Void**

85. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

86. As set forth throughout the Complaint, an actual controversy exists between BCBSSC and Roesel regarding whether the Agency Agreement or the Agent Agreement is illusory.

87. The Court possesses jurisdiction over the parties and the claims set forth in this Complaint.

88. The Court will not abuse its discretion in issuing a declaratory judgment in this action. A declaratory judgment that the Agency Agreement or the Agent Agreement are illusory would serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

89. Upon information and belief, BCBSSC contends that the terms of the Agent Agreement, the Agency Agreement, or both permit BCBSSC to terminate its obligations to pay Roesel commissions for work that has already been performed.

90. A "contract" is illusory and void if it purports to allow one party to terminate its own obligations to perform while requiring the other party to perform. Such a "contract" lacks consideration.

91. If the terms of an agreement between Roesel and BCBSSC permit BCBSSC to terminate its own obligations at will, BCBSSC's performance is entirely optional and the agreement is void and unenforceable as a matter of law.

92. If any unseverable provision of an agreement between Roesel and BCBSSC is void under N.C. Gen. Stat. § 66-193, the entire agreement is void.

93. Roesel requests, in the alternative, that the Court issue an order and judgment declaring that the Agency Agreement and the Agent Agreement are not enforceable contracts.

## COUNT SIX
## In the Alternative: Unjust Enrichment, Quantum Meruit

94. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

95. Roesel sets forth a claim of unjust enrichment against BCBSSC in the alternative, in the event the agreements between Roesel and BCBSSC are found to be illusory and void.

96. Benefits were conferred on BCBSSC under circumstances that gave rise to a legal or equitable obligation on the part of BCBSSC to account for the benefits it received—specifically, benefits in the form of insurance premiums and federal subsidies resulting from approved QHP applications.

97. Roesel conferred substantial benefits on BCBSSC. Specifically, BCBSSC has obtained premiums and federal subsidies from QHPs that Roesel and his Agents solicited and procured.

98. The benefits conferred by Roesel upon BCBSSC were not officious; rather, the benefits were conferred as a result of BCBSSC's inducement and solicitation of Roesel to serve as BCBSSC's agent in exchange for payment, and with BCBSSC's knowledge that such QHP procurement was being conducted by Roesel and his Agents.

99. Absent the work of Roesel and his Agents to solicit and procure QHP applicants for BCBSSC, BCBSSC would not have obtained the benefits conferred, including monetary benefits in the form of premium payments and federal subsidies from those solicited applicants.

100. The efforts of Roesel and his Agents to solicit and procure QHP applicants for BCBSSC were not gratuitous and would not have been made absent the expectation of payment by BCBSSC.

101. Roesel and his Agents solicited and procured QHP applicants for BCBSSC with the reasonable expectation that Roesel would be paid in exchange for doing so.

102. The benefits conferred by Roesel upon BCBSSC are measurable. Specifically, the benefits conferred by Roesel upon BCBSSC, and the damages owed to Roesel, are measurable from the amount of premium payments and any federal subsidies received by BCBSSC as a result of each successful QHP applicant solicited and procured by Roesel or his Agents, for which Roesel has not received payment.

103. As a direct and proximate result of BCBSSC's act of suspending the commissions of Roesel, BCBSSC has been unjustly enriched, and Roesel is entitled to compensation as a matter of law and equity in *quantum meruit*.

104. If the Agency Agreement and Agent Agreement are void, there are no contracts or agreements between BCBSSC and Roesel defining or applicable to the obligations that Roesel seeks to enforce through his unjust enrichment claim.

105. Roesel is entitled to damages in an amount to be established at trial, in the form of the premium payments and any federal subsidies received by BCBSSC as a result of the solicitation and procurement of QHP applicants by Roesel and his Agents.

**COUNT SEVEN**
**Unfair or Deceptive Trade Practices,**
**N.C. Gen. Stat. § 75-1.1 et seq. or S.C. Code Ann. § 39-5-20 et seq.**

106. Roesel repeats and incorporates by reference the preceding paragraphs contained in this Complaint as if fully set forth herein.

107. BCBSSC is intentionally withholding commission payments from Roesel despite the fact that the initial purported ground for suspension has been rescinded and declared void *ab initio*. BCBSSC continues to withhold those commission payments in direct contravention of guidance from CMS—the regulatory agency that oversees QHP issuers such as BCBSSC and QHPs generally. Despite BCBSSC's knowledge of Roesel's rescission from the RTL, and its knowledge that the sole ground for nonpayment has been vitiated, BCBSSC is continuing to withhold millions of dollars in funds from Roesel while profiting from the benefit of insurance premiums and subsidies.

108. BCBSSC intentionally misled Roesel when it encouraged him to continue soliciting applications after CMS purported to terminate him, when it expressed its hope that his challenge to CMS's actions would succeed, and when it represented that it would pay commissions if the challenge to CMS's actions resolved in his favor.

109. BCBSSC acted deceptively and in bad faith when it opportunistically and retroactively purported to change the basis for its termination of his commission payments from a for-cause termination based on his appearance on the Registration Termination List to a no-cause termination in its discretion.

110. BCBSSC engaged in unfair or deceptive trade practices by requiring Roesel to sign illusory "contracts," drafted by BCBSSC, that purported to allow BCBSSC to unilaterally terminate its own obligations to make payments after Roesel had already performed.

111. BCBSSC's actions constitute unfair or deceptive trade practices in violation of the North Carolina Unfair or Deceptive Trade Practices Act and the South Carolina Unfair Trade Practices Act (collectively, the "UDTPA").

112. BCBSSC's actions are in or affecting commerce and in the conduct of commerce, as defined under the UDTPA, including business activities regarding the solicitation and procurement of QHPs.

113. BCBSSC's actions affect the public interest, among other things, because they ultimately make it less likely that consumers will apply for QHPs that suit their needs and because there is a potential for repetition in light of BCBSSC's practices and procedures.

114. BCBSSC's actions have proximately caused actual injury to Roesel in the form of labor without compensation and monetary loss as a result of his payment of expenses and salaries in support of the enterprise.

115. In the event that the Court finds that the Agency Agreement is a binding contract, substantial aggravating circumstances give rise to liability under the UDTPA, including BCBSSC's false representation to Roesel that it would reimburse Roesel and resume paying commissions upon a successful resolution of the Registration Termination List issue. Additional

substantial aggravating circumstances include BCBSSC's refusal to comply with the conclusions issued by CMS, which administers and oversees QHP issuers such as BCBSSC, that the rescission of Roesel's suspension and termination was void *ab initio.*

116. As a direct and proximate result of BCBSSC's unfair or deceptive trade practices, Roesel has suffered damages in an amount to be proven at trial. Pursuant to the UDTPA, Roesel is entitled to actual damages, trebled, plus attorneys' fees and other costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roesel respectfully prays that this Court:

A. Award monetary damages to Roesel in an amount in excess of $75,000.00;

B. Award monetary damages to Roesel in the amount of commissions due to him, plus exemplary damages "two times the amount of commissions due," plus attorneys' fees and court costs pursuant to N.C. Gen. Stat. § 66-192;

C. Award monetary damages to Roesel for the damages caused by BCBSSC's breach of contract;

D. Issue an order and judgment declaring that Roesel is legally entitled to receive commissions for payments BCBSSC receives in the future for renewals of QHPs procured by Roesel and his Agents;

E. Issue an order and judgment declaring that BCBSSC may not unilaterally terminate its contractual obligations to pay commissions for work already performed;

F. In the alternative, issue an order and judgment declaring that the Agency Agreement and/or Agent Agreement between Roesel and BCBSSC are void, unenforceable, and illusory;

G. In the alternative, award monetary damages to Roesel in the amount by which

BCBSSC has been unjustly enriched by premium payments, subsidies, and any other payments received by BCBSSC as the result of QHP applications procured by Roesel and his Agents;

H. Award actual damages, treble damages, and attorneys' fees to Roesel pursuant to the North Carolina Unfair or Deceptive Trade Practices Act or the South Carolina Unfair Trade Practices Act;

I. Award attorneys' fees and costs to Roesel to the maximum extent allowed by law in accordance with applicable law, including N.C. Gen. Stat. § 66-192;

J. Award pre-judgment and post-judgment interest;

K. Tax the costs of this action to BCBSSC;

L. Allow for a jury trial on all issues so triable; and

M. Provide such further relief as the Court may deem just and proper.

Respectfully submitted this 16th day of June, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Christopher W. Jones
Christopher W. Jones
(N.C. State Bar No. 27265)
Jesse Schaefer
(N.C. State Bar No. 44773)
Brian F. Castro
(N.C. State Bar No. 53412)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: (919) 755-8173
Fax: (919) 755-6771
Email: Chris.Jones@wbd-us.com
Jesse.Schaefer@wbd-us.com
Brian.Castro@wbd-us.com

*Counsel for Philip Roesel*