# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:24-cv-409-FL

| | |
|---|---|
| PHILIP ROESEL,<br><br>Plaintiff,<br><br>v.<br><br>United States DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services; CENTERS FOR MEDICARE & MEDICAID SERVICES; STEPHANIE CARLTON, in her official capacity as the Acting Administrator of the Centers for Medicare & Medicaid Services,<br><br>Defendants. | SETTLEMENT AGREEMENT |

This Settlement Agreement ("Agreement") is entered into between Plaintiff Philip Roesel ("Plaintiff"), and Federal Defendants, the U.S. Department of Health and Human Services ("HHS"); Centers for Medicare and Medicaid ("CMS"); Robert F. Kennedy, Jr., in his official capacity as Secretary for the United States Department of Health and Human Services; and Stephanie Carlton, in her official capacity as the Acting Administrator of the Centers for Medicare & Medicaid Services (together, "Federal Defendants"), acting through the United States Attorney's Office for the Eastern District of North Carolina. Collectively, Plaintiff and Federal Defendants will be referred to as "the Parties" in this Agreement.

RECITALS

A. Plaintiff is an agent/broker registered with the Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform created by the Patient Protection and Affordable Care Act (the "Exchanges"). Plaintiff has been assigned National Producer Number ("NPN") 2373701 by the National Insurance Producer Registry.

B. Effective October 26, 2023, CMS sent Plaintiff a Notice of Immediate Suspension of Plan Year ("PY") 2023 Exchange Agreements (the "Notice of Suspension") suspending Plaintiff's PY 2023 Agreements for 90 calendar days. Plaintiff provided CMS a response and rebuttal evidence.

C. Effective December 6, 2023, CMS sent Plaintiff a Notice of Termination (the "Notice of Termination") that terminated Plaintiff's PY 2023 Agreements and prohibited Plaintiff from entering into agreements with CMS and completing registration with the Exchanges until December 6, 2026.

D. Plaintiff timely requested reconsideration. CMS denied Plaintiff's reconsideration request by letter dated March 4, 2024 (the "Final Termination"). Under the Final Termination, Plaintiff was prohibited from entering into agreements with CMS and completing registration with the Exchanges until December 6, 2026. The Final Termination is included as Attachment A. The asserted violations in Attachment A and Plaintiff's litigation of claims or proceedings against any complainant(s) and/or witness(es) identified during the investigation leading to

Plaintiff's suspension and termination, are referred to herein as the "Covered Conduct."

E. On May 10, 2024, Plaintiff filed a complaint for judicial review in the U.S. District Court for the Eastern District of North Carolina entitled *Philip Roesel v. U.S. Dep't of Health and Human Services, et al.*, 7:24-cv-00409-FL (the "Federal Court Action"), *inter alia*, denying the assertions included in Attachment A.

F. The Parties now wish to resolve the Federal Court Action.

G. The Parties enter into this Agreement to settle disputed claims, avoid the delay, expense, inconvenience, and uncertainty of protracted litigation, and to achieve a full and final settlement of the Federal Court Action. The Parties agree that nothing in this Agreement shall be construed as an admission of wrongdoing, culpability, liability or unlawful conduct by the Parties.

In consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1. This Agreement is effective on the date of the signature of the last signatory to the Agreement (the "Effective Date"). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement. The Agreement is entered into between Federal Defendants and Plaintiff. It does not bind any other government agency, entity, official, or employee.

2. Federal Defendants agree that, no later than 5 business days after the Effective Date of this Agreement, Federal Defendants shall (a) rescind, *ab initio*, Plaintiff's suspension and termination as an agent/broker for the Exchanges, (b) remove Plaintiff from the Federally-Facilitated Marketplace ("FFM") Registration Termination List, (c) lift the three-year ban on entering into agreements with CMS, and (d) send official correspondence to Plaintiff and all state departments of insurance where Plaintiff is licensed and/or enrolling customers notifying them that the suspension and termination of the 2023 Exchange Agreements and any ban on Plaintiff's ability to enter into Exchange Agreements are rescinded *ab initio* and, as a result, Plaintiff's suspension and termination are deemed to be void. Thereafter, the Covered Conduct shall not preclude Plaintiff from entering into agreements with CMS and completing registration with the Exchanges. Nothing in this paragraph prohibits the United States (including the Federal Defendants) from denying Plaintiff registration with the Exchanges, or terminating Plaintiff's registration with the Exchanges, for reasons other than the Covered Conduct, provided that any such denial or termination complies with existing law.

3. Federal Defendants agree that Federal Defendants shall rescind the suspension and termination of certain other agent(s) that, like Philip Roesel, were associated with Fenix Insurance Contracting, Inc. as an agent in the HealthSherpa application for engaging in the Covered Conduct, so long as each agent provides Federal Defendants with an executed privacy waiver and release form (the "Release Form") within 30 days of the Effective Date. A list of the agent(s) covered in this

paragraph will be memorialized in Attachment B to this Agreement. Counsel for each party shall provide counsel for the other party a copy of each executed Release Form provided by the agents listed in Attachment B upon receipt. The terms of paragraphs D, 2, and 10 of this Agreement shall apply to each agent listed in Attachment B as if each instance of the word Plaintiff in those paragraphs was replaced with the agent's name.

4. Federal Defendants agree that Federal Defendants shall refrain from suspending and/or terminating certain other agent(s) that, like Philip Roesel, were associated with Fenix Insurance Contracting, Inc. as an agent in the HealthSherpa application for engaging in the Covered Conduct. Any such agent shall provide Federal Defendants with an executed Release Form within 30 days of the Effective Date. A list of the agent(s) covered in this paragraph will be memorialized in Attachment C to this Agreement. Counsel for each party shall provide counsel for the other party a copy of each executed Release Form provided by the agents listed in Attachment C upon receipt.

5. Plaintiff agrees he shall refrain from seeking to collect and/or in any way enforce the judgment entered against Wanda Blakely in the matter of *Philip Roesel d/b/a Fenix Insurance v. Wanda Everette Blakely*, State of South Carolina, County of Richmond, case number 2024CV4010800483.

6. Plaintiff agrees he shall refrain from investigating, initiating, pursuing, and/or continuing any litigation against any complainant(s) and/or witness(es) identified during the investigation leading to Plaintiff's suspension and termination.

7. Plaintiff agrees to abide by all Federal, State, and local laws and regulations pertaining to the Exchanges. The obligations imposed upon Plaintiff pursuant to this Agreement shall be in addition to, and not in replacement of, all requirements imposed upon Plaintiff pursuant to applicable Federal, State, and local laws and regulations, including without limitation to the requirements set forth in Titles 26 and 42 of the United States Code and the regulations promulgated thereunder.

8. Plaintiff agrees to file with the Court a stipulation of dismissal with prejudice as to all claims pending in the instant matter pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure within 15 days of the Effective Date of this Agreement.

9. Federal Defendants' resolution of the Federal Court Action does not establish any precedent regarding Federal Defendants' investigation in this matter and/or any other matter.

10. Subject to the exceptions concerning excluded claims below, and conditioned upon Plaintiff's full compliance with the applicable Terms and Conditions of this Agreement, CMS, HHS, and the Secretary of HHS release Plaintiff from any administrative claim they could have brought through an administrative process for the Covered Conduct. Notwithstanding any other provision in this Agreement, the following claims, to the extent they exist, of the United States, HHS, CMS, or any other agency of the United States are expressly reserved and not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Any non-administrative civil claim;

d. Any liability to the United States (or its agencies) for any administrative claim related to any conduct other than the Covered Conduct; and

e. Any liability based upon obligations created by this Agreement.

11. This Agreement does not constitute an endorsement or approval of any conduct, pattern, practice, or any other behavior.

12. In consideration for Federal Defendants' faithful performance of the terms of this Agreement, Plaintiff, for himself, his successors, and assigns, do hereby relinquish, waive, release, acquit and forever discharge the United States, its agencies (including without limitation HHS and CMS), officers, agents, employees, and servants of and from any and all claims, disputes, actions, charges, contractual obligations, complaints, causes of action, rights, demands, debts, damages, or accountings of whatever nature, at law or in equity, known or unknown, asserted or not asserted, which Plaintiff has now or may have in the future against the United States, its agencies (including HHS and CMS), officers, agents, employees, and servants based on any actions or events which occurred prior to the Effective Date, including any claims for delay, bad faith, disruption and impact any claims (including statutorily based claims) for attorney's fees and costs incurred in connection with them, and any claims for interest.

13. This Agreement shall be binding upon and inure to the benefit of the Parties' respective heirs, successors, assigns, and personal representatives.

14. This Agreement is intended to be for the benefit of the Parties, Wanda Blakely, the individuals referenced in paragraph 6, and the individuals listed in Attachments B and C only. Excepting paragraphs 2–6, 10, and 12 above, the Parties do not release any claims against any other person or entity.

15. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. If any portions of this Agreement are held invalid and unenforceable, all remaining portions shall nevertheless remain valid and enforceable, to the extent they can be given effect without the invalid portions.

17. Each party to this Agreement shall bear its own attorney's fees, costs, and expenses incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

20. This Agreement, including Attachments A, B, and C constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

**[Signature Page Attached]**

**FEDERAL DEFENDANTS**

Executed this 17th day of March, 2025, by:

DANIEL P. BUBAR
Acting United States Attorney

K. Paige O'Hale
Assistant United States Attorney
Eastern District of North Carolina
Counsel for Federal Defendants

**PHILIP ROESEL—PLAINTIFF**

Executed this 14th day of March, 2025, by:

Philip Roesel
Plaintiff

Womble Bond Dickinson (US) LLP
BY: Christopher W. Jones
(N.C. State Bar No. 27265)
Jesse Schaefer
(N.C. State Bar No. 44773)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Counsel for Plaintiff

## ATTACHMENT A – MARCH 4, 2024 FINAL TERMINATION

## ATTACHMENT B

| FIRST | LAST | NPN |
|---|---|---|
| Ryan | Bledsoe | 19349313 |
| Travis | Cheek | 6610985 |
| David | Elrod | 8385953 |
| William | Johnson | 8229242 |
| Henry | Jones | 18450575 |
| Amanda | Joseph | 19547390 |
| Kirby | Keene | 6568184 |
| Norman | Milano | 16531088 |
| Garrett | Patton | 19988957 |
| Kevin | Ristau | 3127609 |
| Kerry | Roesel | 18828011 |
| Bayli | Rossman | 20106431 |
| Princess | Smith | 20270719 |
| Bryson | Towns | 19955477 |
| Allen | Wion | 16644182 |
| Massimiliano | Zeisberg | 18961369 |

_____ Counsel for Federal Defendants

_____ Counsel for Roesel

## ATTACHMENT C

| FIRST | LAST | NPN |
|---|---|---|
| Viktoria | Bodnar | 17486554 |
| Keith | Brightbill | 17132911 |
| Carole | Evans | 21115325 |
| Sara | Fox | 21039230 |
| Tucker | Howell | 8595470 |
| Martin | Jones | 17037868 |
| Philip | Magee | 17707729 |
| Ashley | Simpkins | 18763376 |
| Gerome | Stinson | 6595337 |
| Courtney | Trevino | 21149751 |
| Halle | Tuttle | 21022795 |
| Holly | Whichmann | 20574016 |
| Alissa | White | 21054117 |

_____ Counsel for Federal Defendants

_____ Counsel for Roesel

DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR PROGRAM INTEGRITY

March 4, 2024

**VIA UNITED STATES POSTAL SERVICE and ELECTRONIC MAIL:**
Philip Roesel
[redacted]
[redacted]@aol.com

NPN: 2373701
FFM User ID: PLROESEL

**Re: Request for Reconsideration of Termination of Plan Year (PY) 2023 FFE Registration and Agreements**

Dear Phillip Roesel:

Under federal law and regulations administered by the Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), agents and brokers may assist with or facilitate consumer health insurance enrollments through the Federally-Facilitated Exchanges (FFEs) or State-Based Exchanges on the Federal Platform (SBE-FPs) (collectively, "Exchange" or "Exchanges"). Agents and brokers assisting consumers on the Exchange must abide by the requirements under section 1312(e) of the Patient Protection and Affordable Care Act (ACA) and the regulations promulgated thereunder, including 45 C.F.R. § 155.220. In accordance with federal requirements, you executed the following agreements with CMS as part of your PY 2022 through PY 2023 FFE registration (collectively referred to as " PY 2022-2023 Agreements"):

- Agent/Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (AB General Agreement)
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (IM Privacy and Security Agreement)

CMS has an interest in ensuring that consumers are enrolled in appropriate Exchange plans with full knowledge and consent, and without inducement, other undue influence, or abuse. Consistent with this interest and as authorized by our regulations, CMS has the authority to terminate an agent's or broker's agreements to participate in the FFE if "rebuttal evidence does not persuade

HHS to lift the suspension, or if the agent, broker, or web-broker fails to submit rebuttal evidence during the suspension period[.][1]

On October 26, 2023, CMS sent you the "Notice of Immediate Suspension of Plan Year (PY) 2023 FFE Registration and Agreements" ("Suspension Notice") based on a comprehensive investigation of your conduct. The investigation was undertaken because we had reasonable suspicion that you may have engaged in fraud, or in abusive conduct that may have caused imminent or ongoing consumer harm using personally identifiable information (PII) of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application. CMS upheld its determination in the "Request for Rebuttal of Notice of Suspension of PY 2023 FFE Registration and Agreements" ("Rebuttal Response Notice") dated December 6, 2023.

You submitted a reconsideration request to review the findings and determinations made in the Suspension and Rebuttal Response Notices. CMS has reviewed the information contained in your reconsideration request and has determined that you failed to demonstrate that the preliminary findings and determination were incorrect. The evidence you submitted did not adequately address the patterns in your Marketplace data and the investigative findings that you failed to provide the FFE with correct information per 45 CFR § 155.220(j)(2)(ii).

The affidavit that you submitted as new evidence explains that consumers check a box that indicates that "*he or she expressively consents to my assistance with the enrollment process and with the submission of the application*." However, there is no mention of an enrollment process in the voice recordings that you submitted as verification of consent in your rebuttal, and there is no mention of an enrollment process on your website. There is, however, a statement on your website that the consumer must click on the statement, "YES! I give my permission to *apply* [emphasis added] for free health insurance." 45 CFR § 155.205 outlines the requirements of consumer assistance tools and programs for the Exchanges. More specifically, 45 CFR § 155.205(B)(4) requires the Exchange to provide consumers with an eligibility determination after applying for coverage. Once consumers receive an Eligibility Notice and are deemed eligible for coverage with the Exchange, as outlined in the notice, consumers must then select a QHP as outlined under 45 CFR § 155.205(B)(5). In your reconsideration request, you submitted copies of consumer's eligibility notices as evidence of consumer consent; however, the notices do not prove consumer consent into a QHP. Consent to *apply* for health insurance is not the same as consumers choosing a QHP and consenting to being *enrolled* into a plan.

Additionally, in statement #9 in your affidavit, you state that you utilize a third-party company (AgencyBloc) for automated communications with consumers. You state that you "*track whether these email updates are deliverable and/or opened by applicants post submission. AgencyBloc records whether the applicant views or responds to those emails.*" However, the opening of emails is not a verification of consent for enrollment into a Marketplace QHP.

Lastly, in your affidavit you state "*In submitting the consent form online, consumers expressly agree to, among other things... you agree that you allow your agent, or an employee that works for your agent, to access your Healthcare.gov account to help renew your coverage, respond to requests for more information, or to update items needed or requested.*" However, as outlined in the PY2023 IM Privacy and Security agreement you signed, "*An ABE may not under any*

[1] 45 CFR 155.220(g)(5)(i)(B)

*circumstances create a HealthCare.Gov account for a Consumer, Applicant, Qualified Individual, or Enrollee; log into a Consumer's, Applicant's, Qualified Individual's, or Enrollee's HealthCare.Gov account; log into HealthCare.Gov as a Consumer, Applicant, Qualified Individual, or Enrollee; or create, collect, disclose, access, maintain, store, or use PII for such purposes.* Logging into a consumer's Healthcare.gov account is not permissible as outlined above.

**As a result, your PY 2023 FFE Agreements will remain terminated and you are barred from entering into agreements with CMS and completing FFE registration until December 6, 2026, as noted in the Rebuttal Response Notice.**

This reconsideration decision constitutes CMS' final determination with respect to the allegations in the Suspension and Rebuttal Request Notices. Nothing in this reconsideration decision should be taken to impact or otherwise supersede any future decision or enforcement action by CMS with respect to compliance with applicable FFE requirements. Should CMS discover new facts that indicate additional non-compliance with respect to the named complainants in the Suspension Notice, CMS reserves the right to take appropriate enforcement action, which includes denial of the right to enter into Exchange Agreements in future benefit years, the assessment of civil money penalties, or both.

**Protection of PII and Record Retention Requirements**

Your duty to protect and maintain the privacy and security of PII collected in connection with Exchange applications and enrollments continues in full force and effect until such PII is destroyed at the end of the required record retention period. Please refer to 45 C.F.R. §§ 155.220(g)(4), § 155.260(b) and your PY 2023 Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII that you gained access to, collected, used, and disclosed in the course of facilitating enrollments through the Exchange.

For questions about this notice, please contact MarketplaceAdmin@cms.hhs.gov.

Sincerely,

Jennifer Dupee
Director
Audits and Vulnerabilities Group
Center for Program Integrity