# EXHIBIT 2

Department of Health & Human Services
Centers for Medicare & Medicaid Services
Center for Program Integrity
7500 Security Boulevard
Mail Stop AR-22-56
Baltimore, Maryland 21244-1850

March 20, 2025

**VIA UNITED STATES POSTAL SERVICE and ELECTRONIC MAIL:**
PHILIP ROESEL
[redacted]
[redacted]@AOL.COM

NPN: 2373701
Exchange User ID: PLROESEL

**Re: Rescission of Notice of Immediate Suspension of Plan Year (PY) 2023 Exchange Agreements and Reinstatement of These Agreements**

Dear PHILIP ROESEL:

Under federal law and regulations administered by the Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), agents, brokers, and web-brokers may assist with or facilitate consumer health insurance enrollments through the Federally-facilitated Exchanges (FFEs) or State-based Exchanges on the Federal Platform (SBE-FPs) (collectively, Exchange or Exchanges). Agents, brokers, and web-brokers assisting consumers on the Exchange must abide by the requirements in sections 1312(e), 1313(a)(5)(A), and 1321(a) of the Patient Protection and Affordable Care Act (ACA) and the regulations promulgated thereunder, including 45 C.F.R. § 155.220. In accordance with federal requirements, you executed the following agreements with CMS as part of your PY 2023 Exchange registration (collectively, PY 2023 Exchange Agreements):

- Agent/Broker General Agreement for Individual Market Federally-facilitated Exchanges and State-based Exchanges on the Federal Platform (AB General Agreement);
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for Individual Market Federally-facilitated Exchanges and State-based Exchanges on the Federal Platform (IM Privacy and Security Agreement); and, if applicable,
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for the Small Business Health Options Programs of the Federally-facilitated Exchanges and State-based Exchanges on the Federal Platform (SHOP Privacy and Security Agreement).

**Reinstatement of Your PY 2023 Exchange Agreements**

CMS is committed to ensuring that consumers are enrolled in Exchange plans with full knowledge and consent, and without inducement, other undue influence, or abuse. Consistent with this interest and in accordance with section 1312(e) of the ACA and 45 C.F.R. § 155.220(g)(5), CMS may temporarily suspend an agent's, broker's, or web-broker's

agreement(s) required under 45 C.F.R. §§ 155.220(d) and 155.260(b) to participate in the Exchanges for up to 90 calendar days if CMS "reasonably suspects that an agent, broker, or web-broker may have. . . engaged in fraud, or in abusive conduct that may cause imminent or ongoing consumer harm using personally identifiable information of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application[.]" During the suspension period, the agent, broker, or web-broker may submit evidence to rebut the allegation. "If there is a finding or determination…that an agent, broker, or web-broker engaged in fraud, or abusive conduct that may result in imminent or ongoing consumer harm, using personally identifiable information of Exchange enrollees or applicants or in connection with an Exchange enrollment or application, CMS will terminate the agent's, broker's, or web-broker's agreements required under §§ 155.220(d) and 155.260(b) for cause."

On October 26, 2023, CMS sent you the attached "Notice of Immediate Suspension of Plan Year (PY) 2023 Exchange Agreements" (Suspension Notice) based on our reasonable suspicion that you may have engaged in fraud and/or abusive conduct that may cause imminent or ongoing consumer harm using personally identifiable information (PII) of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application. On December 6, 2023, CMS sent you the attached notice terminating your Plan Year (PY) 2023 Exchange Agreements (Termination Notice). On March 4, 2024, CMS sent you the attached reconsideration decision ("Final Action").

**Upon further review, CMS is rescinding the Suspension Notice, Termination Notice, and Final Action under 45 C.F.R. § 155.220(g)(5)(i)(A) and reinstating your PY 2023 Exchange Agreements, effective October 26, 2023[1].**

The decision to rescind the Suspension and Termination Notices and Final Action, and to reinstate your PY 2023 Exchange Agreements is not intended and should not be interpreted to limit, interfere with, or otherwise supersede any future decision or enforcement action by CMS with respect to compliance with applicable federal requirements. As stated previously, CMS is committed to ensuring that consumers are enrolled in Exchange plans with full knowledge and consent, and without inappropriate inducement, other undue influence, or abuse. Consistent with this interest and in accordance with section 1312(e) of the ACA and 45 C.F.R. § 155.220(g)(1)-(3), CMS may terminate for cause an agent's, broker's, or web-broker's agreement(s) under 45 C.F.R. §§ 155.220(d) and 155.260(b) to participate in the Exchanges if a specific finding of noncompliance or pattern of noncompliance is determined to be sufficiently severe. **Should CMS obtain or discover new facts or information that suggest non-compliance with applicable federal requirements, including the FFE standards of conduct under 45 C.F.R. § 155.220(j) and/or the terms and conditions of your Exchange Agreements, CMS reserves the right to request documentation as part of the Department's monitoring and auditing efforts under 45 C.F.R. § 155.220(c)(5) to take appropriate enforcement action under 45 C.F.R. § 155.220(g)(1)–-(3), and/or to propose to deny you the right to enter into Exchange Agreements in future years under 45 C.F.R. § 155.220(k)(1)(i), where appropriate.**

[1] This action voids the prior enforcement action. You will be removed from the Registration Termination List (RTL). In order to assist consumers in PY 2025, you will still need to complete training and registration for PY 2025. Any questions related to training and registration should be sent to the A/B Help Desk at FFMProducer-AssisterHelpDesk@cms.hhs.gov.

**Protection of PII and Record Retention Requirements**

Your duty to protect and maintain the privacy and security of PII collected in connection with Exchange applications and enrollments continues in full force and effect until such PII is destroyed at the end of the required record retention period. Please refer to 45 C.F.R. §§ 155.220(g)(4), (5)(iii) and (l), 155.260(b), and your PY 2023 Exchange Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII that you gained access to, collected, used, and disclosed in the course of facilitating consumer health insurance enrollments through the Exchange.

For questions about this notice, please email MarketplaceAdmin@cms.hhs.gov.

Sincerely,

Center for Program Integrity

Cc via email:

AL; AR; AZ; CA; CO; DC; DE; FL; GA; IA; IL; IN; KS; KY; LA; MA; MD; MI; MN; MO; MS; NC; ND; NE; NH; NJ; NM; NV; OH; OK; PA; SC; SD; TN; TX; UT; VA; WA; WI; WV

Encl.: Attachment

Department of Health & Human Services
Centers for Medicare & Medicaid Services
Center for Program Integrity
7500 Security Boulevard
Mail Stop AR-22-56
Baltimore, Maryland 21244-1850

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR PROGRAM INTEGRITY

October 26, 2023

**VIA UNITED STATES POSTAL SERVICE and ELECTRONIC MAIL:**
Philip Roesel
[redacted] AOL.COM

NPN: 2373701
Exchange User ID: PLROESEL

**Re: Notice of Immediate Suspension of Plan Year (PY) 2023 Exchange Agreements**

Dear Philip Roesel:

Under federal law and regulations administered by the Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), agents and brokers may assist with or facilitate consumer health insurance enrollments through the Federally-Facilitated Exchanges (FFEs) or State-based Exchanges on the Federal Platform (SBE-FPs) (collectively, "Exchange" or "Exchanges"). Agents and brokers assisting consumers on the Exchange must abide by the requirements under section 1312(e) of the Patient Protection and Affordable Care Act (ACA) and the regulations promulgated there under, including 45 CFR § 155.220. In accordance with federal requirements, you executed the following agreements with CMS as part of your PY 2023 Exchange registration (collectively referred to as "PY 2023 Agreements"):

- Agent/Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (AB General Agreement);
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for Individual Market Federally-Facilitated Exchanges and State-based Exchanges on the Federal Platform (IM Privacy and Security Agreement).

CMS has an interest in ensuring that consumers are enrolled in appropriate Exchange plans with full knowledge and consent, and without inducement, other undue influence, or abuse. Consistent with this interest and as authorized by our regulations, CMS has the authority to temporarily suspend an agent's or broker's agreements to participate in the FFEs and SBE-FPs for up to 90 calendar days if CMS "reasonably suspects that an agent, broker, or web-broker may have . . . engaged in fraud, or in abusive conduct that may cause imminent or ongoing consumer harm using personally identifiable information of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application[.]"[1]

[1] 45 CFR § 155.220(g)(5)(i)(A).

We have preliminarily determined that you enrolled multiple consumers in coverage through the Florida, Georgia, Missouri, South Carolina, Tennessee, and Texas Exchanges without the consumer's knowledge or authorization. **As a result of this determination, CMS is suspending your PY 2023 Agreements for 90 calendar days, effective as of the date of this notice.**[2] This suspension is based on the reasonable suspicion that you may have engaged in fraud, or in abusive conduct that may cause imminent or ongoing consumer harm using personally identifiable information (PII) of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application, as detailed in the Attachment. During this suspension period, you will not be registered with the Exchange or be permitted to assist with or facilitate enrollment of qualified individuals, qualified employers, or qualified employees in coverage in a manner that constitutes enrollment through the Exchanges, nor will you be permitted to assist individuals in applying for advance payments of the premium tax credit (APTC) and cost-sharing reductions (CSRs) for qualified health plans (QHPs).[3]

**Right of Rebuttal**

You have the right to submit evidence to CMS during the 90-calendar day suspension period to rebut the allegations outlined in this letter and the Attachment. Your rebuttal, and the written evidence you rely on to rebut these allegations, should be submitted to CMS via email at MarketplaceAdmin@cms.hhs.gov or via the United States Postal Service at:

Centers for Medicare & Medicaid Services
7500 Security Boulevard
Mail Stop AR-22-56
Baltimore, Maryland 21244-1850

Please return your rebuttal by January 24, 2024. Your rebuttal should include information demonstrating that the preliminary findings and determination described above and in the Attachment are incorrect. You should provide any evidence and documentation that will validate your rebuttal. If you are sending your rebuttal by email, all documentation that includes PII or Protected Health Information (PHI) should be sent encrypted with a password; please remember to share the password with CMS. However, if you choose to send the rebuttal via the United States Postal Service, CMS recommends using a traceable mail option. Once received, CMS will review the evidence and make a determination whether to lift the suspension within 45 calendar days of receipt of such evidence.[4]

If the rebuttal evidence does not persuade CMS to lift the suspension, or if you fail to submit rebuttal evidence during the suspension period, CMS may terminate your PY 2023 Agreements. If your PY 2023 Agreements are terminated, you would no longer be registered with the Exchange or be permitted to assist with or facilitate enrollment of qualified individuals, qualified employers, or qualified employees in coverage in a manner that constitutes enrollment through the Exchange, nor will you be permitted to assist individuals in applying for APTC and cost-

[2] 45 CFR § 155.220(g)(5)(i)(B)
[3] 45 CFR § 155.220(g)(5)(iii)
[4] 45 CFR § 155.220(g)(5)(i)(B)

sharing reductions for QHPs.[5]

Any decision by CMS to terminate your PY 2023 Agreements would be subject to a reconsideration process, as outlined in 45 C.F.R. § 155.220(h). If CMS determines that you failed to comply with the requirements of 45 C.F.R. § 155.220, you may be subject to penalties, in addition to potential termination of your PY 2023 Agreements, including denial of the right to enter into agreements with the Exchange in future years and civil money penalties, as described in 45 C.F.R. § 155.285. [6]

**Protection of PII and Record Retention Requirements**

Your duty to protect and maintain the privacy and security of PII collected in connection with Exchange applications and enrollments continues in full force and effect until such PII is destroyed at the end of the required record retention period. Please refer to 45 C.F.R. § 155.220(g)(4), l55.260(b) and your PY 2023 Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII that you gained access to, collected, used, and disclosed in the course of facilitating enrollments through the Exchange.

For questions about this notice, please email MarketplaceAdmin@cms.hhs.gov.

Sincerely,



Laurie Battaglia
Director, Division of State and Plan Program Integrity

Encl.: Attachment

[5] 45 CFR § l55.220(g)(5)(ii)-(iii)
[6] 45 C.F.R. §155.220(k).

**ATTACHMENT**

**Investigative Findings and Determination**

Based on the facts outlined below, CMS has reasonably suspects you may have engaged in fraud, or abusive conduct that may cause imminent or ongoing consumer harm using PII of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application, as outlined in 45 CFR § 155.220(g)(5)(i)(A).

Based on CMS' review of data, complaints filed with the Exchange Call Center, and interviews conducted with consumers whose Exchange applications included your Exchange User ID, CMS made a preliminary determination that you enrolled multiple consumers in coverage through the Florida, Georgia, Missouri, South Carolina, Tennessee, and Texas Exchanges without their authorization or knowledge and provided inaccurate application information to the Exchange on multiple occasions. You also failed to comply with other requirements in 45 CFR § 155.220. The specific nature of the findings is set forth in detail below:

1. Your Exchange User ID was used to create applications and/or policies for coverage through the Florida, Georgia, Missouri, South Carolina, Tennessee, and Texas Exchanges for multiple consumers without their authorization or knowledge.
   - These submissions occurred throughout 2022 and 2023.
   - These include applications on behalf of the following consumers:
     a. Consumer A
        i. Application ID: 4710529686
        ii. Policy ID: 129122925
        iii. Coverage year: 2023
        iv. State: South Carolina
        v. Application submitted date: December 12, 2022
     b. Consumer B
        i. Application ID: 4842471677
        ii. Policy ID: 132414670
        iii. Coverage year: 2023
        iv. State: Tennessee
        v. Application submitted date: February 20, 2023
     c. Consumer C
        i. Application ID: 4796271759
        ii. Policy ID: 4796271759
        iii. Coverage year: 2023
        iv. State: Texas
        v. Application submitted date: January 11, 2023
     d. Consumer D
        i. Application ID: 4637774155
        ii. Policy ID: 126632560
        iii. Coverage year: 2023
        iv. State: South Carolina

    v. Application submitted date: November 12, 2022

e. Consumer E
    i. Application ID: 4932686698
    ii. Policy ID: 134787550
    iii. Coverage year: 2023
    iv. State: Texas
    v. Application submitted date: May 24, 2023
f. Consumer F
    i. Application ID: 4905031862
    ii. Policy ID: 133582264
    iii. Coverage year: 2023
    iv. State: Arkansas
    v. Application submitted date: April 26, 2023
g. Consumer G
    i. Application ID: 4825507145
    ii. Policy ID: 131483072
    iii. Coverage year: 2023
    iv. State: Florida
    v. Application submitted date: February 4, 2023
h. Consumer H
    i. Application ID: 4826182312
    ii. Policy ID: 132127925
    iii. Coverage year: 2023
    iv. State: Georgia
    v. Application submitted date: February 4, 2023
i. Consumer I
    i. Application ID: 4795775136
    ii. Policy ID: 130956513
    iii. Coverage year: 2023
    iv. State: Missouri
    v. Application submitted date: January 10, 2023
j. Consumer J
    vi. Application ID: 4925394425
    vii. Policy ID: 134631403
    viii. Coverage year: 2023
    ix. State: Tennessee
    x. Application submitted date: May 17, 2023

2. Your Exchange User ID was used to create applications and/or policies for coverage through the Florida, Georgia, Missouri, South Carolina, Tennessee, and Texas Exchanges for multiple consumers whose eligibility applications contained inaccurate information.
    - These submissions occurred throughout 2022 and 2023.
    - These include applications on behalf of the following consumers:
        a. Consumers A through J, identified above.

- The eligibility applications for consumers A through J each included one or more of the following pieces of inaccurate information:
  a. An inaccurate marital status
  b. An inaccurate household composition (e.g., missing tax household members)
  c. An inaccurate household income
  d. An inaccurate income source (e.g., employment, self-employment)
  e. An inaccurate attestation indicating they did not have other existing health coverage (e.g., Medicaid, Medicare, employer-sponsored coverage)

3. Based on data analytics, your Exchange User ID was used to create applications or policies associated with the following:
   a. 179 consumer complaints alleging fraud and/or misconduct in coverage years 2022 through 2023
      - 69 of the corresponding policies were cancelled due to suspected fraud
   b. Days in which more policies were submitted than would be reasonably possible by one A/B
   c. The anomalous use of a common household income amount across a significant portion of applications
   d. The anomalous use of a common self-employment work type (e.g., plumber) across a significant portion of applications

DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR PROGRAM INTEGRITY

December 6, 2023

**VIA UNITED STATES POSTAL SERVICE and ELECTRONIC MAIL:**
Philip Roesel
[redacted]
[redacted]@AOL.COM

NPN: 2373701
Exchange User ID: PLROESEL

**Re: Request for Rebuttal of Notice of Immediate Suspension of PY 2023 Exchange Agreements**

Dear Philip Roesel:

Under federal law and regulations administered by the Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), agents and brokers may assist with or facilitate consumer health insurance enrollments through the Federally-Facilitated Exchanges (FFEs) or State-Based Exchanges on the Federal Platform (SBE-FPs) (collectively, "Exchange" or "Exchanges"). Agents and brokers assisting consumers on the Exchange must abide by the requirements under section 1312(e) of the Patient Protection and Affordable Care Act (ACA) and the regulations promulgated there under, including 45 C.F.R. § 155.220. In accordance with federal requirements, you executed the following agreements with CMS as part of your PY 2023 FFE registration (collectively referred to as "PY2023 Agreements"):

- Agent/Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (AB General Agreement);
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (IM Privacy and Security Agreement).

CMS has an interest in ensuring that consumers are enrolled in appropriate Exchange plans with full knowledge and consent, and without inducement, other undue influence, or abuse. Consistent with this interest and as authorized by our regulations, CMS has the authority to temporarily suspend an agent's or broker's agreements to participate in the FFEs and SBE-FPs for up to 90 calendar days if CMS "reasonably suspects that an agent, broker, or web-broker may have . . . engaged in fraud, or in abusive conduct that may cause imminent or ongoing consumer harm using personally identifiable information of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application[.]"[1]

[1] 45 C.F.R. § 155.220(g)(5)(i)(A).

On October 26, 2023, CMS sent you the "Notice of Immediate Suspension of Plan Year (PY) 2023 Exchange Agreements" ("Suspension Notice") based on a comprehensive investigation of your conduct. The investigation was undertaken because we had reasonable suspicion that you may have engaged in fraud and/or in abusive conduct that may have caused imminent or ongoing consumer harm using personally identifiable information (PII) of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application.

You submitted a rebuttal requesting review of the findings and determinations made in the Suspension Notice, dated October 26, 2023 and October 29, 2023. CMS reviewed the information contained in your rebuttal request and concluded that you failed to demonstrate that the preliminary findings and determination were incorrect. While you indicated you obtained the consent of consumers prior to rendering assistance and provided related evidence, you failed to demonstrate to CMS that you had explicit consent from the consumers prior to assisting with or facilitating their enrollments through an FFE per 45 CFR § 155.220(j)(2)(iii). Rather, you provided voice recordings for Consumers B, F, H, I, and J that included a standard script read by the same narrator, with a consumer providing only their name and date of birth at the end of the recording. However, similar voice recordings were not provided for Consumers C, D, E, and G, and the name and date of birth for Consumer A was inaudible in the recording provided. Furthermore, the voice recordings indicated that not only were the consumers providing you with consent to assist as required by 45 CFR § 155.220(j)(2)(iii), but they were also confirming the accuracy of the information on the eligibility application. CMS would expect that confirmation of the accuracy of eligibility application information would occur after you assist the consumer with completion of an eligibility application per 45 CFR § 155.220(j)(2)(ii).

The information you submitted also did not address investigative findings that you failed to provide the FFE with correct information per 45 CFR § 155.220(j)(2)(ii). Patterns in your Marketplace data, along with testimony provided during consumer interviews, suggest that you provided inaccurate information on eligibility applications and, as a result, some of the consumers received inaccurate eligibility determinations based on application submissions by your Exchange User ID. Not only did you fail to provide evidence that you are not submitting inaccurate information on eligibility applications, you also largely failed to address the other data analytics findings associated with your Exchange User ID. Furthermore, the evidence you did provide suggests that you are telling consumers they are applying for "free health insurance," which CMS believes could be misleading and may be a violation of 45 CFR § 155.220(j)(2)(i), as not all consumers are eligible for free health insurance.

After reviewing your rebuttal and determining that it was insufficient to reverse the conclusion of a reasonable suspicion of fraudulent or abusive conduct, **CMS is now terminating your PY 2023 FFE Agreements for the duration of the current plan year. You will also be prohibited from entering into agreements with CMS and completing FFE registration until December 6, 2026, a 3-year period effective as of the date on this letter.**

**Request for Reconsideration**

You have thirty (30) days from the date of this notice to request reconsideration of this decision, pursuant to 45 CFR § 155.220(h). If you submit a request for reconsideration, CMS will have sixty (60) days to notify you of its determination. If the reconsideration decision overturns the original termination, you will be reinstated effective immediately. If the reconsideration decision upholds your termination, you will not be permitted to assist consumers with eligibility determinations for insurance affordability programs or to enroll consumers in QHPs offered through any FFE, FFE-Small Business Health Options Program (SHOP), State-Based Exchanges-Federal Platform (SBE-FP), or SBE-FP SHOP until December 6, 2026.

Reconsideration requests, including the submission of additional evidence demonstrating that the prior findings and determination are incorrect, should be submitted to CMS via email at MarketplaceAdmin@cms.hhs.gov, via CMS Box at https://cmsbox.app.box.com/f/f28eada9e2a44b43b5ce302a2c0003e5, or via the United States Postal Service at:

> Centers for Medicare & Medicaid Services
> 7500 Security Boulevard
> Mail Stop AR-22-56
> Baltimore, Maryland 21244-1850

If you send your reconsideration request by electronic mail, all documentation that includes PII or Protected Health Information (PHI) should be sent encrypted with a password; please remember to share the password with CMS. However, if you choose to send your reconsideration request via the United States Postal Service, CMS recommends using a traceable mail option.

**Protection of PII and Record Retention Requirements**

Your duty to protect and maintain the privacy and security of PII collected in connection with Exchange applications and enrollments continues in full force and effect until such PII is destroyed at the end of the required record retention period. Please refer to 45 C.F.R. § 155.220(g)(4), § 155.260(b) and your PY 2023 Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII that you gained access to, collected, used, and disclosed in the course of facilitating enrollments through the Exchange.

For questions about this notice, please contact MarketplaceAdmin@cms.hhs.gov.

Sincerely,

Laurie Battaglia

Laurie Battaglia
Director, Division of State and Plan Program Integrity

DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR PROGRAM INTEGRITY

March 4, 2024

**VIA UNITED STATES POSTAL SERVICE and ELECTRONIC MAIL:**
Philip Roesel
[redacted]aol.com

NPN: 2373701
FFM User ID: PLROESEL

**Re: Request for Reconsideration of Termination of Plan Year (PY) 2023 FFE Registration and Agreements**

Dear Phillip Roesel:

Under federal law and regulations administered by the Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), agents and brokers may assist with or facilitate consumer health insurance enrollments through the Federally-Facilitated Exchanges (FFEs) or State-Based Exchanges on the Federal Platform (SBE-FPs) (collectively, "Exchange" or "Exchanges"). Agents and brokers assisting consumers on the Exchange must abide by the requirements under section 1312(e) of the Patient Protection and Affordable Care Act (ACA) and the regulations promulgated thereunder, including 45 C.F.R. § 155.220. In accordance with federal requirements, you executed the following agreements with CMS as part of your PY 2022 through PY 2023 FFE registration (collectively referred to as " PY 2022-2023 Agreements"):

- Agent/Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (AB General Agreement)
- Agreement Between Agent or Broker and the Centers for Medicare & Medicaid Services for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform (IM Privacy and Security Agreement)

CMS has an interest in ensuring that consumers are enrolled in appropriate Exchange plans with full knowledge and consent, and without inducement, other undue influence, or abuse. Consistent with this interest and as authorized by our regulations, CMS has the authority to terminate an agent's or broker's agreements to participate in the FFE if "rebuttal evidence does not persuade

HHS to lift the suspension, or if the agent, broker, or web-broker fails to submit rebuttal evidence during the suspension period[.][1]

On October 26, 2023, CMS sent you the "Notice of Immediate Suspension of Plan Year (PY) 2023 FFE Registration and Agreements" ("Suspension Notice") based on a comprehensive investigation of your conduct. The investigation was undertaken because we had reasonable suspicion that you may have engaged in fraud, or in abusive conduct that may have caused imminent or ongoing consumer harm using personally identifiable information (PII) of an Exchange enrollee or applicant or in connection with an Exchange enrollment or application. CMS upheld its determination in the "Request for Rebuttal of Notice of Suspension of PY 2023 FFE Registration and Agreements" ("Rebuttal Response Notice") dated December 6, 2023.

You submitted a reconsideration request to review the findings and determinations made in the Suspension and Rebuttal Response Notices. CMS has reviewed the information contained in your reconsideration request and has determined that you failed to demonstrate that the preliminary findings and determination were incorrect. The evidence you submitted did not adequately address the patterns in your Marketplace data and the investigative findings that you failed to provide the FFE with correct information per 45 CFR § 155.220(j)(2)(ii).

The affidavit that you submitted as new evidence explains that consumers check a box that indicates that "*he or she expressively consents to my assistance with the enrollment process and with the submission of the application*." However, there is no mention of an enrollment process in the voice recordings that you submitted as verification of consent in your rebuttal, and there is no mention of an enrollment process on your website. There is, however, a statement on your website that the consumer must click on the statement, "YES! I give my permission to *apply* [emphasis added] for free health insurance." 45 CFR § 155.205 outlines the requirements of consumer assistance tools and programs for the Exchanges. More specifically, 45 CFR § 155.205(B)(4) requires the Exchange to provide consumers with an eligibility determination after applying for coverage. Once consumers receive an Eligibility Notice and are deemed eligible for coverage with the Exchange, as outlined in the notice, consumers must then select a QHP as outlined under 45 CFR § 155.205(B)(5). In your reconsideration request, you submitted copies of consumer's eligibility notices as evidence of consumer consent; however, the notices do not prove consumer consent into a QHP. Consent to *apply* for health insurance is not the same as consumers choosing a QHP and consenting to being *enrolled* into a plan.

Additionally, in statement #9 in your affidavit, you state that you utilize a third-party company (AgencyBloc) for automated communications with consumers. You state that you "*track whether these email updates are deliverable and/or opened by applicants post submission. AgencyBloc records whether the applicant views or responds to those emails.*" However, the opening of emails is not a verification of consent for enrollment into a Marketplace QHP.

Lastly, in your affidavit you state "*In submitting the consent form online, consumers expressly agree to, among other things... you agree that you allow your agent, or an employee that works for your agent, to access your Healthcare.gov account to help renew your coverage, respond to requests for more information, or to update items needed or requested.*" However, as outlined in the PY2023 IM Privacy and Security agreement you signed, "*An ABE may not under any*

[1] 45 CFR 155.220(g)(5)(i)(B)

*circumstances create a HealthCare.Gov account for a Consumer, Applicant, Qualified Individual, or Enrollee; log into a Consumer's, Applicant's, Qualified Individual's, or Enrollee's HealthCare.Gov account; log into HealthCare.Gov as a Consumer, Applicant, Qualified Individual, or Enrollee; or create, collect, disclose, access, maintain, store, or use PII for such purposes.* Logging into a consumer's Healthcare.gov account is not permissible as outlined above.

**As a result, your PY 2023 FFE Agreements will remain terminated and you are barred from entering into agreements with CMS and completing FFE registration until December 6, 2026, as noted in the Rebuttal Response Notice.**

This reconsideration decision constitutes CMS' final determination with respect to the allegations in the Suspension and Rebuttal Request Notices. Nothing in this reconsideration decision should be taken to impact or otherwise supersede any future decision or enforcement action by CMS with respect to compliance with applicable FFE requirements. Should CMS discover new facts that indicate additional non-compliance with respect to the named complainants in the Suspension Notice, CMS reserves the right to take appropriate enforcement action, which includes denial of the right to enter into Exchange Agreements in future benefit years, the assessment of civil money penalties, or both.

**Protection of PII and Record Retention Requirements**

Your duty to protect and maintain the privacy and security of PII collected in connection with Exchange applications and enrollments continues in full force and effect until such PII is destroyed at the end of the required record retention period. Please refer to 45 C.F.R. §§ 155.220(g)(4), § 155.260(b) and your PY 2023 Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII that you gained access to, collected, used, and disclosed in the course of facilitating enrollments through the Exchange.

For questions about this notice, please contact MarketplaceAdmin@cms.hhs.gov.

Sincerely,



Jennifer Dupee
Director
Audits and Vulnerabilities Group
Center for Program Integrity