IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:26-cv-00253-D-KS

| | |
|---|---|
| PHILIP ROESEL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, | ) |
| | ) |
| | ) |
| DEFENDANT. | ) |

**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE AND DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ....... 1

FACTUAL BACKGROUND ....... 4

ARGUMENT ....... 6

I. This Case Should Be Transferred to the District of South Carolina Pursuant to 28 U.S.C. § 1404(a). ....... 6

A. The District of South Carolina Is a Proper Forum. ....... 7

B. The Majority of Factors Weigh in Favor of Transfer to the District of South Carolina. ....... 8

i. Witness Convenience and Costs. ....... 10

ii. Localized Interest. ....... 11

iii. Relative Ease of Access of Proof. ....... 12

iv. Practical Trial Considerations. ....... 13

v. Forum Familiarity with Governing Law. ....... 14

vi. Avoidance of Conflict of Law Issues. ....... 14

C. Plaintiff's Choice of Forum Is Entitled to Reduced Weight. ....... 15

D. The Remaining Factors Are Neutral. ....... 16

II. Once Transferred, the Court Should Dismiss the Complaint for Failure to State a Claim. ....... 17

A. The Complaint Fails to State a Claim for Breach of Contract Because Plaintiff Does Not Have Standing, and the Plain Language of the Contract Permits BCBS-South Carolina's Conduct at Issue Here. ....... 19

i. Roesel Lacks Standing to Sue for Breach of Contract. ....... 19

ii. The Plain Language of the Agreements Contradicts Plaintiff's Allegations of Breach. ....... 20

B. Plaintiff's Claims for Declaratory Judgments Regarding Commissions, Which are Dependent on the Success of Plaintiff's Breach of Contract Claim, Necessarily Fail. ....... 23

C. The Complaint Fails to State a Claim for Violation of N.C. Gen. Stat. §§ 66-191, 66-192, and 75-1.1 because North Carolina Law Does Not Apply. ....... 23

D. The Complaint Fails to State a Claim for a Declaratory Judgment that the Agency Agreement Is Void. ....... 25

E. The Unjust Enrichment Claim Fails Because a Valid and Enforceable Contract Exists, and Because BCBS-South Carolina Did Not Receive Gratuitous Benefits From Plaintiff. ....... 26

F. The Complaint Fails to State a Claim for Violation of either N.C. Gen. Stat.§ 75-1.1 et seq. or S.C. Code Ann.§ 39-5-20 et seq. ..........................28

CONCLUSION.......................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Atari v. McNeal*,
159 F. Supp. 2d 224 (W.D.N.C. 2000) ....................14

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................17

*Besley v. FCA US, LLC*,
No. 1:15-cv-01511-JMC, 2016 WL 109887 (D.S.C. Jan. 8, 2016) ....................26

*Bessinger v. Food Lion, Inc.*,
305 F. Supp. 2d 574 (D.S.C. 2003)....................28, 29

*Branch Banking & Trust Co. v. Thompson*,
107 N.C. App. 53, 418 S.E.2d 694 (1992)....................29

*Brimer v. MDElite Laser & Aesthetic, LLC*,
770 F. Supp. 3d 876 (E.D.N.C. 2025)....................18

*Caper Corp. v. Wells Fargo Bank, N.A.*,
578 F. App'x 276 (4th Cir. 2014) ....................18

*Caturano v. Armchem Int'l Corp.*,
No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303 (W.D.N.C. Oct. 14, 2020)........10, 15, 16

*Davis v. Stadion Money Mgmt, LLC*,
No. 1:19CV119, 2019 WL 7037426 (M.D.N.C. Dec. 20, 2019)....................12

*ERIE Ins. Co. v. Winter Constr. Co.*,
393 S.C. 455, 713 S.E.2d 318 (Ct. App. 2011)....................20

*Fayetteville Inv'rs v. Com. Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ....................19

*Fidrych v. Marriot Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ....................8

*First S. Bank v. Fifth Third Bank, N.A.*,
No. 7:10-2097-MGL, 2013 WL 12148112 (D.S.C. Sept. 30, 2013) ....................28

*In re Gardner Denver, Inc.*,
No. 8505-VCN, 2014 WL 715705 (Del. Ch. Feb. 21, 2014)....................................................2

*Gee v. Delta Speir Plantation LLC*,
No. 9:18-CV-02755-DCN, 2020 WL 4674150 (D.S.C. June 11, 2020) ................................20

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ..........................................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...........................................................................................................8

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
378 F. Supp. 3d 413 (E.D.N.C. 2019)..............................................................................17

*Hardee's Food Sys., Inc. v. Rosenblatt*,
44 F. Supp. 2d 767 (E.D.N.C. 1998)..................................................................................9

*Hoffman v. Blaski*,
363 U.S. 335 (1960)...........................................................................................................7

*Holloway v. Pagan River Dockside Seafood, Inc.*,
669 F.3d 448 (4th Cir. 2012) ..........................................................................................17

*J.R. v. Walgreens Boots All., Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020)...................................................................................26

*James C. Greene Co. v. Great Am. E & S Ins. Co.*,
321 F. Supp. 2d 717 (E.D.N.C. 2004)................................................................................9

*Jenkins v. CitiFinancial, Inc.*,
No. CV 2:05-1199-PMD-GCK, 2007 WL 9753133 (D.S.C. Jan. 16, 2007)...........................25

*Johnson v. Cont'l Fin. Co., LLC*,
131 F.4th 169 (4th Cir. 2025) .........................................................................................25

*Johnson v. Cricket Council USA, Inc.*,
658 F. Supp. 3d 276 (E.D.N.C. 2023)..............................................................................17

*Kreisler v. Goldberg*,
478 F.3d 209 (4th Cir. 2007) ..........................................................................................19

*Maryland v. Exxon Mobil Corp.*,
406 F. Supp. 3d 420 (D. Md. 2019) ...................................................................................2

*McLaughlin v. Chin*,
726 F. Supp. 3d 507 (E.D.N.C. 2024)................................................................................9

*Morgan v. Kemper Ins. Companies*,
754 F.2d 145 (4th Cir. 1985) ....................22

*In re Nantahala Vill., Inc.*,
976 F.2d 876 (4th Cir. 1992) ....................18

*Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*,
290 S.C. 475, 351 S.E.2d 347 (Ct. App. 1986)....................28

*Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342 (4th Cir. 2013) ....................18

*Parham v. Weave Corp.*,
323 F. Supp. 2d 670 (M.D.N.C. 2004) ....................15

*Philips v. Pitt Cnty. Mem'l Hosp.*,
572 F.3d 176 (4th Cir. 2009) ....................2

*Prince Payne Enters., Inc. v. Tigua Enters., Inc.*,
No. 2:18-cv-2552-DCN, 2019 WL 1058089 (D.S.C. Mar. 6, 2019) ....................28

*Prysmian Cables & Sys. USA, LLC v. Szymanski*,
573 F. Supp. 3d 1021 (D.S.C. 2021)....................21

*Republic Mortg. Ins. Co. v. Brightware, Inc.*,
35 F. Supp. 2d 482 (M.D.N.C. 1999) ....................14

*Roach v. Wells Fargo Bank, Nat'l Ass'n*,
302 N.C. App. 43, 49, 924 S.E.2d 562 (2025)....................29

*Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*,
567 F. Supp. 2d 799 (M.D.N.C. 2008) ....................11, 12, 13, 17

*The In Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ....................24

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015) ....................7, 9

*United States v. Carolina Wrecking, Inc.*,
No. 2:17-0276-RMG, 2019 WL 1777964 (D.S.C. Apr. 23, 2019)....................27

*Valencell, Inc. v. Apple Inc.*,
No. 5:16-CV-1-D, 2017 WL 491646 (E.D.N.C. Feb. 6, 2017) ....................7

*WPB Partners, LLC v. Old Republic Nat. Title Ins. Co.*,
No. 5:12-CV-132-F, 2013 WL 395112 (E.D.N.C. Jan. 31, 2013)....................16

**Statutes**

28 U.S.C. § 1391(b)(1) ....................7

28 U.S.C. § 1391(b)(2) ....................7

28 U.S.C. § 1404(a) ....................1, 6, 7, 10

N.C. Gen. Stat.§ 66-191 ....................23

N.C. Gen. Stat.§ 75-1.1 ....................23, 27, 28

N.C. Gen. Stat.§ 75-1.1 et seq. ....................3, 24, 27

S.C. Code Ann. § 36-2-803(A)(1) ....................8

S.C. Code Ann. § 39-5-10 *et seq.* ....................4

S.C. Code Ann.§ 39-5-20 ....................27

**Rules & Regulations**

Fed. R. Civ. P. 8(a)(2) ....................17

Fed. R. Civ. P. 12(b)(6) ....................1, 6, 17

Fed. R. Civ. P. 45(c)(1)(A) ....................10

Local Rule 7.1 ....................1

Defendant Blue Cross and Blue Shield of South Carolina ("BCBS-South Carolina"), pursuant to LR 7.1, files this memorandum in support of its motion (i) to transfer venue pursuant to 28 U.S.C. § 1404(a); and (ii) to dismiss Plaintiff's Complaint [Dkt. #1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff entered an agency agreement with BCBS-South Carolina to solicit and procure South Carolina based applicants for qualified health plans. In order to be eligible to receive commissions, Plaintiff was required to be in good standing with the Center for Medicare & Medicaid Services ("CMS"), meaning he was authorized by CMS to actively serve as an agent and his authority to assist customers was neither suspended nor terminated. This case is an attempt by Plaintiff to require BCBS-South Carolina to defend litigation in North Carolina in which he seeks to recover commission payments for a period of time in which his active status with CMS, as well as with BCBS-South Carolina, had been terminated.[1]

First and foremost, this case should be transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). The only fact in this case that relates in any manner to North Carolina is that Plaintiff resides in the state. When identifying and weighing the factors determining transfer, in-state residency of Plaintiff alone, as the situation is here, is insufficient to maintain this case in North Carolina. BCBS-South Carolina is domiciled and maintains its principal place of business

[1] Plaintiff owns and operates a business known as "Best Insurance Contracts." That entity (not Plaintiff individually) entered a 2017 contract with BCBS-South Carolina that *superseded* the 2013 Agency Agreement upon which Plaintiff bases his claims in this lawsuit. Plaintiff brings these invalid claims in his individual name and capacity premised solely upon the 2013 Agency Agreement notwithstanding the fact that it was superseded by the 2017 Agreement and entered by his corporate entity, Best Insurance Contracts. Therefore, it is the 2017 Superseding Agency Agreement (not the 2013 Agency Agreement), defined below and attached hereto as **Exhibit A**, which governs any payment (and non-payment) of commissions that are the subject of this case. *See infra* § II.A.i. For the Court's benefit, BCBS-South Carolina will cite to both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement, where applicable.

in South Carolina. As an agent of BCBS-South Carolina, Plaintiff was contracted to solicit South Carolina customers for South Carolina health insurance policies in compliance with South Carolina health insurance laws and regulations. The vast majority of documents and information relevant to the claims in this case are located in South Carolina. In these circumstances, the obvious advantages of litigating in South Carolina greatly outweigh the burdens of litigating in North Carolina, including the ability to subpoena witnesses (the majority of which are located in South Carolina), and the conservation of resources associated with discovery, motions and trial.

After the resolution of BCBS-South Carolina's transfer motion, each of Plaintiff's claims should be dismissed for their respective failure to state a claim upon which relief can be granted. Plaintiff's breach of contract claim fails for lack of standing because it is premised upon a 2013 agency agreement between himself individually and BCBS-South Carolina (the "2013 Agency Agreement) that was superseded by a 2017 agreement between Best Insurance Contracts and BCBS-South Carolina (the "2017 Superseding Agency Agreement"), which is attached as Exhibit A.[2] Even if Plaintiff has standing to assert breach of contract (which is denied), his breach claim fails as the plain terms of the 2013 Agency Agreement and the 2017 Superseding Agency Agreement contradict his allegations.

---

[2] Courts may consider "[documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Courts have recognized that a document is "integral" if it serves as the "source for the . . . facts as pled in the complaint." *In re Gardner Denver, Inc.*, No. 8505-VCN, 2014 WL 715705, at *3 (Del. Ch. Feb. 21, 2014); *see also Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 451 (D. Md. 2019) (a document is "integral" if it is one that, by its very existence, "gives rise to the legal rights asserted." (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011))). Here, the 2017 Superseding Agency Agreement is integral to the Complaint because the Complaint asserts claims arising from the contractual relationship between Plaintiff and Defendant. In 2013, the contractual relationship *was* between Plaintiff individually and BCBS-South Carolina. However, in 2017, the contractual relationship changed to one between Best Insurance Contracts, the corporate agency owned by Plaintiff, and BCBS-South Carolina, with contract terms nearly identical to those in 2013. Even though the Complaint references only the 2013 Agency Agreement by name, the 2017 Superseding Agency Agreement is integral to Plaintiff's breach of contract claim because it is the one that defines the actual rights and obligations between the parties at the time of the alleged breach.

Plaintiff also asserts two claims for declaratory judgment: one seeking a declaration that he is entitled to continuing commissions from BCBS-South Carolina regardless of his terminated status, and the other seeking a declaration that his contract with BCBS-South Carolina does not authorize it to cease paying commissions notwithstanding his termination. These declarations, which are dependent on the viability of Plaintiff's claim that BCBS-South Carolina breached its contract with him, necessarily fail because Plaintiff's breach of contract claim fails, as discussed above.

A third declaratory judgment claim also should be dismissed. Plaintiff asks the Court to declare that his contract with BCBS-South Carolina somehow is illusory and thus void because it allows BCBS-South Carolina to *unilaterally* terminate the contract. However, it is indisputable that both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement contain a *mutual* termination provision. In these circumstances, courts repeatedly have held that such contracts are neither illusory nor void.

Plaintiff also asserts several North Carolina statutory claims including the purported violation of (i) the North Carolina Unfair and Deceptive Trade Practices Act; and (ii) North Carolina Sales Representative Commissions statutes. However, these North Carolina state law claims are inapplicable because South Carolina law applies here. Plaintiff cannot look to another state's law for liability.

As it should do with Plaintiff's defective breach of contract claim, the Court likewise should dismiss his "alternative" claim for unjust enrichment. As a threshold matter, despite Plaintiff's deficient breach of contract claim, there is a binding agreement between the parties, whether the 2013 Agency Agreement or the 2017 Superseding Agency Agreement. It is that binding agreement, not an unjust enrichment claim, that governs this dispute. But laying that aside

for purposes of argument, there can be no unjust enrichment claim during the period when Plaintiff was not an agent of BCBS-South Carolina, when he was not authorized to solicit South Carolina customers for qualified health plans, and when Plaintiff was not authorized to act as an agent by CMS.

Finally, Plaintiff's claims for violation of the South Carolina and North Carolina Unfair and Deceptive Trade Practices Acts fail as a matter of law. Both North Carolina and South Carolina require that a plaintiff allege much more than a simple breach of contract, such as substantial aggravating circumstances. Even an intentional breach of contract is insufficient to form the basis for these statutory claims. Plaintiff has not alleged *any* aggravating or intentional conduct here, let alone any substantial aggravating circumstances. The claim for violation of the South Carolina Unfair Trade Practices Act fails for the additional reason that South Carolina requires that the allegedly wrongful conduct must have an impact on the public interest. Such cannot be the case here, where the only conduct at issue relates to a private contract.

For these reasons, Plaintiff's Complaint against BCBS-South Carolina should be transferred and dismissed.

## FACTUAL BACKGROUND

Plaintiff Philip Roesel is a resident of Wilmington, North Carolina. Compl. ¶ 15. BCBS-South Carolina "is a mutual insurance corporation organized under the laws of South Carolina, with its headquarters in Columbia, South Carolina." *Id.* ¶ 16.

Plaintiff entered into the 2013 Agency Agreement with BCBS-South Carolina on or around September 2013. The 2013 Agency Agreement was superseded by an agency agreement between Best Insurance Contracts, signed by Plaintiff as owner, and BCBS-South Carolina on or around June 2017 (the "2017 Superseding Agency Agreement").

The 2013 Agency Agreement and the 2017 Superseding Agency Agreement have substantially similar terms.[3] As relevant here, both agreements include the following terms:

- The agency had a duty to "solicit[] and procure applications for life, accident and health, and disability insurance, as authorized by [BCBS-South Carolina]." 2013 Agency Agreement § II ¶ 1; 2017 Superseding Agency Agreement § II ¶ 1;

- Subject to certain limitations in the agreements, BCBS-South Carolina was required to pay the agency commissions pursuant to a Commission Schedule for its work as an agent for BCBS-South Carolina. 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2;

- Producers contracted by the agency were required to be licensed in South Carolina and approved for appointment by BCBS-South Carolina. 2013 Agency Agreement § II ¶ 3; 2017 Superseding Agency Agreement § II ¶ 3;

- Commission payments were prohibited for agencies or producers not licensed in South Carolina or appointed with BCBS-South Carolina. 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2;

- Commissions were payable only while the insured maintained their South Carolina policy, and only for so long as the agency remained the "Agent of Record" for the Insured. 2013 Agency Agreement § VIII ¶ 2; 2017 Superseding Agency Agreement § VII ¶ 3; and

- The South Carolina Department of Insurance could direct termination of commission payments and direct termination of producer or sub-agent appointments. 2013 Agency Agreement § XII ¶ 3; 2017 Superseding Agency Agreement § XII ¶ 4.

CMS is a federal agency that requires "all prospective agents to meet certain requirements and to enter into CMS Exchange Agreements, or Marketplace Agreements, on an annual basis before being authorized by CMS to serve as an Agent." Compl. ¶¶ 17, 21. CMS maintains "the

[3] To aid the Court's comparison of the 2013 Agency Agreement and the 2017 Superseding Agency Agreement, attached as **Exhibit B** is a redline comparison of the 2017 Superseding Agency Agreement over the 2013 Agency Agreement. Text in blue is new text in the 2017 Superseding Agency Agreement that was not in the 2013 Agency Agreement; text in red is text from the 2013 Agency Agreement that was removed from the 2017 Superseding Agency Agreement; and text in green is text that appears in both agreements but was moved to a different location in the 2017 Superseding Agency Agreement.

Registration Termination List," which identifies agents "whose authority to assist consumers . . . has been suspended or terminated by CMS." *Id.* ¶ 22.

By correspondence dated October 26, 2023, CMS notified Plaintiff that his status as an agent was suspended for a period of 90 days, during which time he would be placed on the Registration Termination List. *Id.* ¶ 25. On December 6, 2023, CMS sent Plaintiff another letter "terminating [Plaintiff's] authorization to participate as an Agent[.]" *Id.* ¶ 26.

On January 30, 2024, BCBS-South Carolina sent Plaintiff a letter suspending his commission payments effective January 1, 2024. *Id.* ¶ 42. In July 2024, "[BCBS-South Carolina] terminated the appointment with the State of South Carolina that allowed Roesel to serve as an insurance agent for [BCBS-South Carolina]." *Id.* ¶ 47.

Plaintiff brought this lawsuit seeking payment of commissions from BCBS-South Carolina for the period during which he was suspended and terminated by CMS and BCBS-South Carolina. Defendants now move to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I. <u>This Case Should Be Transferred to the District of South Carolina Pursuant to 28 U.S.C. § 1404(a).</u>

Defendant respectfully asks the Court to transfer this case to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). A district court may transfer a civil action to any other district in which it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When evaluating a motion to transfer venue under § 1404(a), courts first determine whether the lawsuit could have been brought in the proposed transferee forum. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Second, district courts in the Fourth Circuit consider four factors when deciding whether a change

of venue is warranted: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

This lawsuit could have been brought in the District of South Carolina and the balance of factors weighs in favor of transfer. Thus, this case should be transferred to the District of South Carolina.

**A. The District of South Carolina Is a Proper Forum.**

The first inquiry is whether the action "might have been brought" in the proposed transferee district in the first place. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (quoting 28 U.S.C. § 1404(a)). An action "might have been brought" in any district where venue and personal jurisdiction "would have been proper in the proposed transferee district had the plaintiffs filed suit there." *Valencell, Inc. v. Apple Inc.*, No. 5:16-CV-1-D, 2017 WL 491646, at *3 (E.D.N.C. Feb. 6, 2017) (citation omitted). Both of these requirements are met here, and the District of South Carolina would have been a proper venue for this action.

Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides." The District of South Carolina is the judicial district where Defendant "resides," having its principal place of business in Columbia, South Carolina. *See* Compl. ¶ 12 ("[BCBS-South Carolina] is a citizen of South Carolina"). In addition, pursuant to 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Such is the case here, as a substantial portion of the alleged events or omissions giving rise to the claim occurred in the District of South Carolina. The commission payments in question originate from BCBS-South Carolina in South Carolina. Ex. C,

Monroe Decl. at ¶ 8. Roesel's work as an "Agency" was to solicit South Carolina consumers for South Carolina health insurance policies. 2013 Agency Agreement § II ¶ 1; 2017 Superseding Agency Agreement § II ¶ 1. And the "Agency" is governed by the rules and regulations of South Carolina pursuant. 2013 Agency Agreement § III ¶ I; 2017 Superseding Agency Agreement § III ¶ I.

Additionally, BCBS-South Carolina would be subject to personal jurisdiction in the District of South Carolina. Under South Carolina Code Annotated section § 36-2-803(A)(1), the District of South Carolina has specific jurisdiction over BCBS-South Carolina through its transacting of business in the state. In addition, the District of South Carolina has general jurisdiction over BCBS-South Carolina through BCBS-South Carolina's incorporation and maintenance of principal place of business in South Carolina. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Fidrych v. Marriot Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020) ("[A] corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business.").

Thus, since BCBS-South Carolina has its principal place of business in South Carolina, a substantial part of the alleged events occurred in South Carolina, and since BCBS-South Carolina is subject to personal jurisdiction in the District of South Carolina, Roesel could have originally brought this action in the District of South Carolina.

**B. The Majority of Factors Weigh in Favor of Transfer to the District of South Carolina.**

Turning to the second inquiry, "District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund*, 791 F.3d at 444. This Court and other North

Carolina federal courts apply a more granular test in weighing the convenience and justice interests, and address the following eleven factors:

> 1. The plaintiff's initial choice of forum;
> 2. The residence of the parties;
> 3. The relative ease of access of proof;
> 4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
> 5. The possibility of a [jury] view;
> 6. The enforceability of a judgment, if obtained;
> 7. The relative advantages and obstacles to a fair trial;
> 8. Other practical problems that make a trial easy, expeditious, and inexpensive;
> 9. The administrative difficulties of court congestion;
> 10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
> 11. The avoidance of unnecessary problems with conflict of laws.

*Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998) (citations omitted). No single factor is dispositive. *See James C. Greene Co. v. Great Am. E & S Ins. Co.*, 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004). In conducting its review, this Court "has substantial discretion to decide whether to transfer venue." *McLaughlin v. Chin*, 726 F. Supp. 3d 507, 515 (E.D.N.C. 2024).

Of the relevant transfer factors, only one—Plaintiff's choice of forum—arguably favors retaining this action in the Eastern District of North Carolina. That one factor, however, is not dispositive and is entitled to diminished weight because the dispute centers on BCBS-South Carolina's South Carolina-based commission administration, appointment and licensing records, client base, and internal payment decisions.

The remaining factors weigh heavily in favor of transfer or are neutral, making it clear that transfer to the District of South Carolina is appropriate here.

i. Witness Convenience and Costs.

The convenience of witnesses "is often cited as the most significant factor in ruling on a motion to transfer," and "when transfer will better serve the convenience of the witnesses, the motion under Section 1404(a) is more likely to be granted." *Caturano v. Armchem Int'l Corp.*, No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303, at *5 (W.D.N.C. Oct. 14, 2020) (quoting 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed.)). As outlined above, the witnesses most likely to have knowledge of the central issues—commission calculations, payment records, agency and producer appointment records, internal decision-making, and communications concerning the commissions at issue—are located in South Carolina. Ex. C, Monroe Decl. ¶ 12. These witnesses will be necessary to explain the South Carolina-based proof discussed above.

The compulsory-process component likewise supports transfer to the extent nonparty South Carolina witnesses become necessary. Under Rule 45, a trial subpoena may command attendance only within 100 miles of where the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). Columbia, South Carolina is more than 100 miles from either Raleigh or Wilmington, North Carolina (and indeed, is over 200 miles away), so any nonparty witnesses located in or around Columbia would be well outside the Eastern District of North Carolina's subpoena range. Therefore, to the extent discovery reveals South Carolina-based nonparty witnesses with material testimony, which BCBS-South Carolina expects, BCBS-South Carolina would have no means to compel their attendance at trial, effectively rendering its likely presentation of evidence through non-party witnesses impossible. On the contrary, if the case is transferred to the District of South Carolina, there are likely no non-party witnesses outside of the Court's subpoena range. Roesel, therefore, would not face the same evidence presentation issue BCBS-South Carolina currently faces.

Thus, because BCBS-South Carolina anticipates that witnesses are in South Carolina, and South Carolina is likely the *only* accessible forum for any nonparty witnesses, this factor weighs in favor of transfer.

ii. Localized Interest.

"Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008). Here, that district is the District of South Carolina. The products at issue are South Carolina-centered health insurance products, offered to South Carolina citizens, through South Carolina coverage areas, tied to South Carolina provider networks. Ex. C, Monroe Decl. ¶ 8. In addition, the South Carolina Department of Insurance has oversight and enforcement authority over the parties. 2013 Agency Agreement § XII; 2017 Superseding Agency Agreement § XII ¶¶ 4, 5.

South Carolina's local interest is manifestly reflected in both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement. Both agreements required producers contracted by the Agency to be licensed in *South Carolina* and approved for appointment by BCBS-South Carolina. *See* 2013 Agency Agreement § II ¶ 3; 2017 Superseding Agency Agreement § II ¶ 3. Both prohibit commission payments to agencies or producers not licensed in South Carolina or appointed with BCBS-South Carolina. 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2. And both provided that commissions were payable only while the insured maintained their South Carolina policy. 2013 Agency Agreement § VIII ¶ 2; 2017 Superseding Agency Agreement § VII ¶ 3.

Both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement also included several provisions that expressly referenced South Carolina regulatory oversight. First, BCBS-South Carolina could terminate the agreements for cause if the agency's license was

suspended, cancelled, or revoked "by the state of South Carolina or any regulatory body thereof." 2013 Agency Agreement § XII ¶ 3(f); 2017 Superseding Agency Agreement § XII ¶ 3(f). Second, the South Carolina Department of Insurance was authorized to direct termination of the commission payments. 2013 Agency Agreement § XII ¶ 3; 2017 Superseding Agency Agreement § XII ¶ 4. And third, the South Carolina Department of Insurance could direct termination of producer or sub-agent appointments. 2013 Agency Agreement § XII ¶ 3; 2017 Superseding Agency Agreement § XII ¶ 5.

These provisions reinforce that the parties agreed that South Carolina has the closest relationship to the dispute. This factor therefore weighs strongly in favor of transfer to the District of South Carolina.

iii. <u>Relative Ease of Access of Proof.</u>

In weighing transfer, "courts consider the relative ease of access to witnesses and other evidence for trial." *Speed Trac Techs., Inc.*, 567 F. Supp. 2d at 804. Acknowledging that the physical location of documents may carry less weight in the age of electronic discovery, courts addressing this factor consider where the relevant business operations, custodians, witnesses, and decision-making are centered. *See Davis v. Stadion Money Mgmt., LLC*, No. 1:19CV119, 2019 WL 7037426, at *4 (M.D.N.C. Dec. 20, 2019) (finding this factor favored transfer where the proposed transferee district was the "epicenter" of the defendant's business and the "location where all of the executive and management activities, decision-making, and strategy" occurred).

BCBS-South Carolina does not solicit insurance business or directly advertise insurance products in the State of North Carolina. Ex. C, Monroe Decl. ¶ 10. BCBS-South Carolina does not maintain any offices in the State of North Carolina. *Id.* ¶ 11. Columbia, South Carolina is BCBS-South Carolina's principal place of business where "executive and management activities, corporate decision-making, and strategic planning all take place." *Id.* ¶ 9. BCBS-South Carolina's

witnesses with knowledge of commission calculations, commission-payment records, agency and producer appointment records, internal decision-making, and communications concerning the commissions at issue are in South Carolina. *Id.* ¶ 12. The relevant BCBS-South Carolina records and systems concerning those issues are maintained or controlled by South Carolina-based personnel. *Id.* ¶¶ 13, 14. Even if Plaintiff has his own files in North Carolina, the central proof of liability in this case—how commissions were calculated, why commissions were suspended, and BCBS-South Carolina's decisions surrounding the commissions—is in South Carolina. *Id.*

The agreements between the parties also confirm that the relevant proof will involve BCBS-South Carolina's South Carolina-based appointment and approval records. Both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement provide that producers could not solicit insurance for BCBS-South Carolina until BCBS-South Carolina approved their appointment. 2013 Agency Agreement § IV ¶ 9; 2017 Superseding Agency Agreement § V ¶ 9. Evidence concerning those approval and appointment decisions is maintained by BCBS-South Carolina in South Carolina and is relevant to the commissions in dispute. Ex. C, Monroe Decl. ¶ 14. Thus, this factor weighs strongly in favor of transfer.

iv. <u>Practical Trial Considerations.</u>

"In weighing this factor, courts consider the relative time and expense of travel." *Speed Trac Techs., Inc.*, 567 F. Supp. 2d at 805. This factor weighs in favor of transfer for the same reasons the access-to-proof and witness-convenience factors favor transfer. The key witnesses and custodians concerning BCBS-South Carolina's commission calculations, payment records, appointment records, internal communications, and suspension/nonpayment decisions are located in South Carolina. Trying this case in the District of South Carolina will reduce the travel, expense, and disruption associated with presenting that proof. In addition, considering BCBS-South Carolina's principal place of business is in Columbia, South Carolina, and considering further that

it does not operate its business in North Carolina, transfer will also avoid the inefficiency of requiring multiple South Carolina-based BCBS-South Carolina employees and records custodians to travel to North Carolina to testify regarding South Carolina-administered commission and appointment decisions. This factor therefore favors transfer.

v. Forum Familiarity with Governing Law.

Courts recognize that the transferee forum is better suited where that forum's own law is likely to govern or materially inform the dispute. *See Republic Mortg. Ins. Co. v. Brightware, Inc.*, 35 F. Supp. 2d 482, 486 (M.D.N.C. 1999) ("A district court in California certainly would have more experience and expertise in applying California contract law than this Court."). This factor favors transfer. Although neither the 2013 Agency Agreement nor the 2017 Superseding Agency Agreement contain a traditional choice-of-law clause, both agreements repeatedly incorporate South Carolina insurance law and regulatory obligations. For example, both explicitly require that the Agency comply with South Carolina insurance laws and regulations. 2013 Agency Agreement § III ¶ 1; 2017 Superseding Agency Agreement § III ¶ 1. Also, both tie commission eligibility to South Carolina appointment, licensure, and legal compliance. 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2. Because South Carolina insurance law and regulatory requirements will inform the parties' rights and obligations in this case, the District of South Carolina is the forum more familiar with the legal framework implicated by this dispute.

vi. Avoidance of Conflict of Law Issues.

Conflict-of-law concerns favor transfer where litigating in the transferee forum would place the case in a court "at home with the state law that must govern the action and, thereby, avoid unnecessary problems with conflict of laws." *Atari v. McNeal*, 159 F. Supp. 2d 224, 228 (W.D.N.C. 2000). This factor also favors transfer here. As detailed above, the commission dispute arises from a South Carolina insurer's agency and producer relationships, which are expressly tied

to South Carolina appointment, licensing, and insurance-regulatory requirements. 2013 Agency Agreement §§ VIII ¶ 1, III ¶ 1; 2017 Superseding Agency Agreement §§ VII ¶ 2, III ¶ 1. Litigating in the District of South Carolina would therefore place this case in the forum with the closest connection to that regulatory framework and would reduce unnecessary conflict-of-law issues. The existence of North Carolina statutory claims, if applicable, *see infra* § II.C., does not make the Eastern District of North Carolina the more appropriate forum because those claims depend on the threshold question of whether BCBS-South Carolina owed commissions at all. That question is governed by the South Carolina-centered commission, appointment, licensing, and regulatory framework explained above, and resolution of those threshold South Carolina-centered issues will substantially narrow, if not resolve, any remaining North Carolina statutory issues. Transfer therefore reduces, rather than creates, conflict-of-law concerns.

### C. Plaintiff's Choice of Forum Is Entitled to Reduced Weight.

Plaintiff's choice of forum is the only factor that weighs against transfer. Even then, such weight is diminished where the chosen forum has a limited connection to the operative facts. *See Caturano*, 2020 WL 6065303, at *4 ("Although the court ordinarily gives the plaintiff's choice of forum considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum."); *Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("[T]he deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action.").

Here, Plaintiff's only North Carolina connection is his residence. *See* Compl. ¶ 13. But the conduct giving rise to this dispute does not involve Plaintiff's residence. The conduct at issue is BCBS-South Carolina's alleged suspension and nonpayment of commissions—conduct centered in South Carolina. As explained above, relevant witnesses, records, and evidence are centered in

South Carolina and the agreements at issue contain references to South Carolina, not North Carolina.

Plaintiff's residence alone should not allow him to transform the Eastern District of North Carolina into the forum with the closest relationship to the operative facts. Otherwise, BCBS-South Carolina could be required to litigate in any district where an agent or agency principal happens to reside, even when the relevant witnesses, conduct, and records are centered in South Carolina. Plaintiff's choice of forum therefore does not outweigh the multiple material factors favoring transfer.

**D. The Remaining Factors Are Neutral.**

The remaining five factors that this Court considers are neutral. First, when each party resides in a different state, the factor addressing the residence-of-the-parties is neutral. *See Caturano*, 2020 WL 6065303, at *5. That is true here: Plaintiff resides in North Carolina, while BCBS-South Carolina maintains its principal place of business in South Carolina. *See* Compl. ¶ 12; Ex. C, Monroe Decl. ¶ 4. Second, the possibility of a jury view is irrelevant because this is a commission and contract dispute; it does not involve premises, real property, or any physical location that a jury would need to inspect. Third, there is no reason to believe that a judgment would not be enforceable in either district. Fourth, similarly, there is no reason to believe that either forum presents any relative advantage or obstacle to a fair trial.

Finally, administrative congestion is neutral. The median time-to-disposition and time-to-trial figures are comparable—7.7 months versus 8.6 months to disposition, and 31.2 months versus 35.8 months to trial. Courts require a much more significant difference before congestion merits weight. For example, in *WPB Partners, LLC v. Old Republic National Title Insurance Co.*, the court found that a 7.9-month versus 8.6-month time to disposition was not a significant difference. No. 5:12-CV-132-F, 2013 WL 395112, at *4 n.7 (E.D.N.C. Jan. 31, 2013). Likewise, the court in

*Speed Trac Technologies, Inc.* found that a 1.8-month difference in time to disposition and a potential delayed trial was not significant. 567 F. Supp. 2d at 805. This case should be treated no differently. There is a 0.9-month difference in time to disposition, which is half the difference in *Speed Trac Technologies, Inc.* And a four-month difference in time to trial is only a slight delay, which is insignificant.

Because the factors overall weigh in favor of transfer, the Court should transfer this case to the District of South Carolina.

## II. **Once Transferred, the Court Should Dismiss the Complaint for Failure to State a Claim.**

The Federal Rules of Civil Procedure mandate that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The grounds for relief must be "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To avoid dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Cricket Council USA, Inc.*, 658 F. Supp. 3d 276, 280 (E.D.N.C. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the Court must accept all well-pleaded factual allegations in the complaint as true, the Court "does not consider 'legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments.'" *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 378 F. Supp. 3d 413, 425 (E.D.N.C. 2019) (alterations in original) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)).

A complaint may fail to state a claim upon which relief can be granted under Rule 12(b)(6) in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim; or second, by failing to allege sufficient facts to support a legal cause of action. *Holloway v. Pagan*

*River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In applying the motion to dismiss standard, the Court must apply South Carolina law. "Federal courts sitting in diversity must apply the substantive law of the forum state, including its choice-of-law rules." *Brimer v. MDElite Laser & Aesthetic, LLC*, 770 F. Supp. 3d 876, 885 (E.D.N.C. 2025). Thus, applying the laws of the forum state of North Carolina, "[c]hoice of law in contracts cases is governed by the rule of *lex loci contractus*[.]" *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 280 (4th Cir. 2014). The *lex loci contractus* rule "focuses on the state where the contract was entered into or the state where the contract was to be performed." *In re Nantahala Vill., Inc.*, 976 F.2d 876, 881 (4th Cir. 1992).

Here, neither the 2013 Agency Agreement nor the 2017 Superseding Agency Agreement note where they were executed, and thus choice of law is determined by "where the contract was to be performed." Undoubtedly, South Carolina law applies. BCBS-South Carolina's principal place of business is in South Carolina. Compl. ¶ 12; Ex. C, Monroe Decl. ¶ 4. A substantial part of the alleged events occurred in South Carolina, and the dispute centers on BCBS-South Carolina's South Carolina-based commission administration, appointment and licensing records, client base, and internal payment decisions. *See* Ex. C, Monroe Decl. ¶¶ 12–14. Moreover, both agreements repeatedly incorporate South Carolina insurance law and regulatory obligations by requiring that the Agency comply with South Carolina insurance laws and regulations. 2013 Agency Agreement § III ¶ 1; 2017 Superseding Agency Agreement § III ¶ 1. Both also tie commission eligibility to South Carolina appointment, licensure, and legal compliance. 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2. *See supra* § I.

### A. The Complaint Fails to State a Claim for Breach of Contract Because Plaintiff Does Not Have Standing, and the Plain Language of the Contract Permits BCBS-South Carolina's Conduct at Issue Here.

#### i. Roesel Lacks Standing to Sue for Breach of Contract

Plaintiff lacks standing to sue for breach of contract because he is not a party to the operative agreement, the 2017 Superseding Agency Agreement. "It is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity." *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007).

Plaintiff has sued BCBS-South Carolina under the 2013 Agency Agreement, which was between himself individually, as "Agency or Producer," and BCBS-South Carolina. 2013 Agency Agreement, at 1. However, the 2013 Agency Agreement is not the operative contract governing the payment of commissions. The 2013 Agency Agreement was explicitly superseded by the 2017 Superseding Agency Agreement between Best Insurance Contracts, signed by Plaintiff as owner, and BCBS-South Carolina. Indeed, the 2017 Superseding Agency Agreement explicitly states as follows:

> This Agreement supercedes [*sic*], terminates, and otherwise renders null and void any and all previous agreements (including Agency agreements or, to the extent applicable, any Producer Agreements or letters of intent) and any and all prior representations and statements of Companies, whether written, oral or implied, and now constitutes the entire agreement between the parties as of the effective date of this Agreement.

2017 Superseding Agency Agreement § XI. The terms of the 2013 Agency Agreement and the 2017 Superseding Agency Agreement are nearly identical, *see* Ex. B, and thus it is clear that the 2017 Superseding Agency Agreement superseded the 2013 Agency Agreement. As such, Plaintiff lacks standing to bring a claim against BCBS-South Carolina for breach of contract, as Plaintiff was not a party to the 2017 Superseding Agency Agreement, which is the operative contract.

ii. The Plain Language of the Agreements Contradicts Plaintiff's Allegations of Breach.

Assuming Plaintiff has standing to bring his claim for breach contract, the claim fails on the merits, as the plain and unambiguous terms of both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement permit BCBS-South Carolina's conduct at issue here.

Despite Plaintiff's attempt to plead around the language in the agreements, the terms of the parties' contract control over his allegations. *See Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails"); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (finding that "if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization"). Indeed, contract law is well-settled that "[w]hen the language of a contract is clear, explicit, and unambiguous, the language of the contract alone determines the contract's force and effect and the court must construe it according to its plain, ordinary, and popular meaning." *ERIE Ins. Co. v. Winter Constr. Co.*, 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct. App. 2011). "[I]f the language of the contract is unambiguous 'courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.'" *Gee v. Delta Speir Plantation LLC*, No. 9:18-cv-02755-DCN, 2020 WL 4674150, at *4 (D.S.C. June 11, 2020) ) (quoting *Dawes v. Nash County*, 357 N.C. 442, 449, 584 S.E.2d 760, 764 (2003)), *aff'd,* Nos. 20-1852, 20-1912, 2022 WL 575589 (4th Cir. Feb. 25, 2022).

Here, Plaintiff alleges that "[BCBS-South Carolina] breached its Agency Agreement with Roesel by failing to pay commissions due to Roesel." Compl. ¶ 67. Plaintiff points to Section VIII.1 of the 2013 Agency Agreement, which states that "the Agency 'shall' receive commissions

(as defined in the Commission Schedules) in accordance with the terms and conditions of the Commission Schedules." Compl. ¶ 67(A). Conveniently, Plaintiff fails to account for numerous other provisions that permit termination of the contract and cessation of commission payments.

First, both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement state that "Commissions shall be payable only for so long as the . . . Agency remains the 'Agent of Record' for the Insured." 2013 Agency Agreement § VIII ¶ 2; 2017 Superseding Agency Agreement § VII ¶ 3. The Complaint alleges that on October 26, 2023, CMS sent Plaintiff a Notice of Immediate Suspension, suspending him as a registered agent for 90 days. Compl. ¶ 25. Then, on December 6, 2023, before the 90 days lapsed, CMS sent Roesel a Notice of Termination, "terminating his authorization to participate as an Agent[.]" Compl. ¶ 26. Upon Roesel's termination from CMS, he was placed on a "Registration Termination List, which lists the NPNs of Agents whose authority to assist consumers in the Exchanges has been suspended or terminated by CMS." Compl. ¶ 22.

During the time in which Plaintiff was suspended and then subsequently terminated, Plaintiff was not authorized to act as an Agent pursuant to CMS's actions. Without his status as an agent, Plaintiff could not, and *did not*, perform the functions he was contractually obligated to perform as an agent of record. *See* Compl. ¶¶ 21, 23; *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1039 (D.S.C. 2021) ("Under South Carolina law, '[a] party who seeks to recover damages for breach of a contract must show that the contract has been performed on his part, or at least that he was, at the appropriate time, able, ready and willing to perform it.'" (alteration in original) (quoting *Mozingo & Wallace Architects, L.L.P. v. Grand*, 379 S.C. 478, 666 S.E.2d 267, 270 (S.C. Ct. App. 2008))). When Plaintiff was suspended and subsequently terminated by CMS, and thus he could not (and did not) perform services required of an agent of

record, BCBS-South Carolina's contractual obligation to pay him commissions ended pursuant to the plain terms of the agreement.

Though Plaintiff alleges that he is owed commissions because CMS rescinded *ab initio* his suspension and termination, *see* Compl. ¶¶ 48, 54, such action is irrelevant for two reasons. First, the plain terms of the agency agreements govern the contractual relationship between BCBS-South Carolina and the agent, whether that was Roesel or Best Insurance Contracts. CMS's rescission and decision to reinstate agents *ab initio* has no bearing on the terms of private contracts like the 2013 Agency Agreement or the 2017 Superseding Agency Agreement. *See Morgan v. Kemper Ins. Cos.*, 754 F.2d 145, 147 (4th Cir. 1985) (finding retroactive enforcement of a statute on an agreement entered prior to the statute's effective date would be "impermissible impairment of the contractual obligations in violation of the contract clause of the United States Constitution").

Second, at no point did CMS's rescission obligate BCBS-South Carolina to pay commissions. Indeed, CMS's own document, entitled "Frequently Asked Questions: National Producer Numbers (NPNs) Rescinded on the Agent/Broker Suspension and Termination List," stated that "[w]hen an agent's or broker's suspension or termination is rescinded, and assuming an agent or broker otherwise meets applicable federal requirements, issuers *may* compensate them for enrollments[.]" (emphasis added). Dkt. 1-3, at 1. This is neither an obligation nor a requirement that BCBS-South Carolina pay Plaintiff for enrollments. Nor is it an obligation to act contrary to the plain terms of the parties' agreement.

Thus, Plaintiff does not have standing to sue for breach of contract because the 2017 Superseding Agency Agreement is the operative contract, which was between BCBS-South Carolina and Best Insurance Contracts. Even if Plaintiff does have standing, the 2013 Agency Agreement and the 2017 Superseding Agency Agreement permitted BCBS-South Carolina to

cease payment of commissions when Plaintiff was terminated by CMS and thereby could not (and did not) act as an agent.

### B. Plaintiff's Claims for Declaratory Judgments Regarding Commissions, Which are Dependent on the Success of Plaintiff's Breach of Contract Claim, Necessarily Fail.

Plaintiff seeks two declarations relating to commissions. First, he alleges that he "is entitled to continuing commissions from [BCBS-South Carolina] for QHP policies and renewals that were procured by Roesel and his Agents." Compl. ¶ 75. Second, Plaintiff asks that the Court declare that "[n]either the language of the Agency Agreement nor the language of the Agent Agreement authorizes [BCBS-South Carolina] to cease paying commissions for work that Roesel and his Agents have already done." Compl. ¶ 81.[4] If the Court finds that BCBS-South Carolina properly ceased payment of commissions under the 2013 Agency Agreement or 2017 Superseding Agency Agreement, *see supra* § II.A., then these claims are moot, as the issue as to whether Plaintiff is owed commissions will have been decided.

### C. The Complaint Fails to State a Claim for Violation of N.C. Gen. Stat. §§ 66-191, 66-192, and 75-1.1 because North Carolina Law Does Not Apply.

Plaintiff alleges that BCBS-South Carolina's non-payment of commissions "constitute[s] unfair or deceptive trade practices" under North Carolina law, and that BCBS-South Carolina "has failed to comply with North Carolina General Statute section 66-191, which requires [BCBS-South Carolina] to pay commissions owed to Roesel even upon termination of any agency relationship." Compl. ¶¶ 59, 111. But Plaintiff overlooks the threshold issue – that South Carolina applies to the

---

[4] Plaintiff did not set forth the terms of the "Agent Agreement," nor did he attach it to his Complaint. BCBS-South Carolina thereby only responds to the allegation relating to the terms of the 2013 Agency Agreement.

parties' contractual relationship and the payment (or non-payment) of commissions, not North Carolina law.[5]

North Carolina General Statutes sections 66-191, 66-192, and 75-1.1 are statutes that exist solely by virtue of the North Carolina General Assembly's legislative enactment. But South Carolina law—not North Carolina law—governs the substantive rights and obligations arising from the 2013 Agency Agreement and the 2017 Superseding Agency Agreement, *see supra* § II.A. BCBS-South Carolina's principal place of business is in South Carolina. The dispute is centered around commissions tied to South Carolina insurance for South Carolina residents. *See* 2013 Agency Agreement § VIII ¶ 1; 2017 Superseding Agency Agreement § VII ¶ 2. Both agency agreements repeatedly incorporate South Carolina insurance law and regulatory obligations and require that the Agency comply with South Carolina insurance laws and regulations. 2013 Agency Agreement § III ¶ 1; 2017 Superseding Agency Agreement § III ¶ 1. As such, the North Carolina Sales Representative Commissions statutes and the North Carolina Unfair and Deceptive Trade Practices Act have no application to this dispute.

Plaintiff cannot invoke the statutory protections of his home state whose law does not govern the conduct here, including payment of commissions, any more than Plaintiff could invoke the statutory protections of any other of the fifty states. *See In Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (noting that "The Fourth Circuit thus construes the [Unfair and Deceptive Trade Practices] Act as addressing 'primarily local concerns'. Application of the Act in cases having only an incidental local effect not only would be contrary to the Fourth Circuit's interpretation of the Act, but also would render the Act constitutionally suspect." (internal

[5] Plaintiff's claim for violation of North Carolina General Statute section 75-1.1 fails for the additional reason that, as described below, it merely parrots Plaintiff's breach of contract claim without "substantial aggravating circumstances," as required to allege unfair and deceptive trade practices under North Carolina law. *See infra* § II.F.

citation omitted)). Plaintiff's claims under sections 66-191, 66-192, and 75-1.1 find their foundation solely in North Carolina law, which is inapplicable to the claims and conduct here which all relate to South Carolina, and therefore fail to state a claim upon which relief can be granted and must be dismissed.

### D. The Complaint Fails to State a Claim for a Declaratory Judgment that the Agency Agreement Is Void.

Plaintiff seeks a declaration from the Court that the 2013 Agency Agreement is illusory because it "permit[s] [BCBS-South Carolina] to terminate its own obligations at will." Compl. ¶ 91. But Plaintiff's claim for a declaratory judgment that the 2013 Agency Agreement is void fails because the agreement (as well as the 2017 Superseding Agency Agreement) contains a mutual, not unilateral, termination right.

An illusory contract is one that "lacks consideration, and is therefore never formed, [because] it consists entirely of illusory promises." *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 178 (4th Cir. 2025), *cert. dismissed, Cont'l Fin. Co. v. Johnson*, 146 S. Ct. 1367 (2026). "When one side can avoid all of its obligations, the agreement lacks the kind of basic reciprocity that is necessary to form a binding contract[.]" *Id.*

While courts find that unilateral termination provisions generally render a contract illusory, they have found the opposite to be true as well – when contracts have a *mutual* termination provision, rather than a unilateral provision, they are not illusory. *See Jenkins v. CitiFinancial, Inc.*, No. 2:05-1199-PMD-GCK, 2007 WL 9753133, at *8 (D.S.C. Jan. 16, 2007) ("Generally, where one party reserves without restriction the right to cancel or modify an agreement at any time, courts have held that the promise is illusory and the agreement unenforceable. Where, however, the right to cancellation is tempered by its terms, express or implied, so that cancellation is not

solely at the whim of the promisor, the promise may still serve as consideration." (internal citations omitted)).

Here, there is no such unilateral termination provision, as Plaintiff's allegations would suggest. Both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement state that, "This Agreement shall terminate: [a]t any time, *by either party hereto*, upon 30 days written notice." 2013 Agency Agreement § XII ¶ 1 (emphasis added); 2017 Superseding Agency Agreement § XII ¶ 1 (emphasis added). This is a mutual termination provision because "either party" can terminate. Thus, neither the 2013 Agency Agreement nor the 2017 Superseding Agency Agreement are illusory or void, and Plaintiff's claim for a declaratory judgment on the issue warrants dismissal.

**E. The Unjust Enrichment Claim Fails Because a Valid and Enforceable Contract Exists, and Because BCBS-South Carolina Did Not Receive Gratuitous Benefits From Plaintiff.**

A claim for unjust enrichment requires that a plaintiff show he had a reasonable expectation of payment, or that the defendant should reasonably have expected to pay. *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 562 (D.S.C. 2020) (quoting *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 993–94 (4th Cir. 1990)), *aff'd,* No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) . "In South Carolina, a party is generally precluded from pursuing a claim for either unjust enrichment or promissory estoppel where a valid contract governs the subject matter in dispute." *Besley v. FCA US, LLC*, No. 1:15-cv-01511-JMC, 2016 WL 109887, at *3 (D.S.C. Jan. 8, 2016)

Plaintiff's unjust enrichment claim fails for two reasons. First, a valid contract governs the subject matter in dispute, thus precluding the claim. Plaintiff alleges that the 2013 Agency Agreement is "a binding contract, and all conditions precedent have been met for its enforcement." Compl. ¶ 64. Regardless of which agreement applies—the 2013 Agency Agreement or the 2017

Superseding Agency Agreement—the payment of commissions to Plaintiff that are the "subject matter in dispute" here are governed by express contract. *See* 2013 Agency Agreement § II; 2017 Superseding Agency Agreement § II. As such, the claim "cannot be sustained where there is an express contract covering the issue of compensation." *United States v. Carolina Wrecking, Inc.*, No. 2:17-0276-RMG, 2019 WL 1777964, at *4 (D.S.C. Apr. 23, 2019);

Second, Plaintiff cannot meet the requirements of an unjust enrichment claim based on his suspension and termination as an agent. When CMS suspended Plaintiff's status as an agent, Plaintiff could not, and *did not,* perform his obligations as an agent. *See* Compl. ¶¶ 21, 23; Dkt. 1-2, at 6 (CMS notifying Plaintiff that as a result of his suspension, he was not permitted, *inter alia*, "to assist with or facilitate enrollment of qualified individuals" nor permitted to assist individuals in applying for QHPs); 2013 Agency Agreement § II (delineating the duties of the agency); 2017 Superseding Agency Agreement § II (same). It would be unreasonable for Plaintiff to expect payment during that time, and unreasonable for BCBS-South Carolina to expect to pay Plaintiff during that time, because BCBS-South Carolina was not (and could not) receive any benefits from Plaintiff. This is particularly true considering that both agreements allowed for payment of commissions "only for so long as . . . Agency remains the 'Agent of Record[.]'" 2013 Agency Agreement § VIII ¶ 2; 2017 Superseding Agency Agreement § VII ¶ 3.

Plaintiff's claim for unjust enrichment fails because an express contract governing the subject matter dispute exists, barring the claim. Even if Plaintiff could bring an unjust enrichment claim, it would be unreasonable to expect Plaintiff to receive commission payments while he was suspended and then terminated as an agent, thereby defeating the elements of the claim.

### F. The Complaint Fails to State a Claim for Violation of either N.C. Gen. Stat.§ 75-1.1 et seq. or S.C. Code Ann.§ 39-5-20 et seq.

Plaintiff alleges a claim for violation of North Carolina General Statute section 75-1.1, or in the alternative, South Carolina Code Annotated section§ 39-5-20. Both claims fail as a matter of law.

Plaintiff's claim for violation of section 39-5-20 fails for lack of a public interest impact. South Carolina law requires that conduct alleged to form the basis of a claim under section § 39-5-20 "have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected." *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 479, 351 S.E.2d 347, 350 (Ct. App. 1986).

Plaintiff alleges that "[BCBS-South Carolina's] actions affect the public interest, among other things, because they ultimately make it less likely that consumers will apply for QHPs that suit their needs and because there is a potential for repetition in light of BCBS-South Carolina's practices and procedures." Compl. ¶ 113. This speculative and conclusory allegation does not rise to the level of public interest sufficient for a UTPA claim as it does not "establish by *specific* facts that members of the public were affected or were likely to be affected by the unfair conduct." *First S. Bank v. Fifth Third Bank, N.A.*, No. 7:10-2097-MGL, 2013 WL 12148112, at *3 (D.S.C. Sept. 30, 2013) (emphasis added); *see Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 585 (D.S.C. 2003) (finding that "the only harm suffered from the alleged unfair act was purely private"), *aff'd sub nom. Bessinger v. Food Lion, LLC*, 115 F. App'x 636 (4th Cir. 2004). Indeed, Plaintiff's claims relate to a private contractual dispute with BCBS-South Carolina. His unsupported speculation that "there is a potential for repetition" does not constitute a violation of the SCUTPA. *See Prince Payne Enters., Inc. v. Tigua Enters., Inc.*, No. 2:18-cv-2552-DCN, 2019 WL 1058089, at *5 (D.S.C. Mar. 6, 2019) (finding that there were no facts alleged in the complaint to support a

"potential for repetition," including "(1) showing that the same type of acts occurred in the past; or (2) showing the defendant's procedures create the potential for repetition of unfair acts").

Both claims fail for the additional reason that they are simply based on Plaintiff's breach of contract claim, which is insufficient under both North Carolina and South Carolina law.[6] Under North Carolina law, a plaintiff must allege "substantial aggravating circumstances" beyond the breach itself. *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 418 S.E.2d 694 (1992) (citation omitted). And under South Carolina law, even "a deliberate or intentional breach of contract, without more, will not sustain a claim under the SCUTPA." *Bessinger*, 305 F. Supp. 2d at 584.

The crux of Plaintiff's claims is that "[BCBS-South Carolina] is intentionally withholding commission payments" from Plaintiff "in direct contravention of guidance from CMS[.]" Compl ¶ 107. But this is nothing more than an allegation that BCBS-South Carolina is intentionally breaching its contract with Plaintiff, an allegation which is "best resolved by simply determining whether the parties properly fulfilled their contractual duties." *Roach v. Wells Fargo Bank, Nat'l Ass'n*, 302 N.C. App. 43, 49, 924 S.E.2d 562, 567 (2025) (quoting *Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 624 (2001)). And as discussed above, BCBS-South Carolina's cessation of commission payments was proper under both the 2013 Agency Agreement and the 2017 Superseding Agency Agreement, *see supra* § II.B.ii.

## CONCLUSION

For the reasons stated herein, the Court should grant the Motion to Transfer Venue and Dismiss as to all claims alleged in the Complaint.

[6] Additionally, as discussed above, Plaintiff fails to state a claim for violation of N.C. Gen. Stat.§ 75-1.1 because South Carolina law applies here, not North Carolina law. *See supra* § II.D.

Respectfully submitted this the 13th day of August, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ Chad D. Hansen
Chad D. Hansen (NC Bar No. 32713)
Elisabeth P. Briand (NC Bar No. 58039)
1001 West Fourth Street
Winston-Salem, NC 27101-2400
chadhansen@ktslaw.com
ebriand@ktslaw.com
Telephone: 336-607-7300
Facsimile: 336-607-7500

*Attorneys for Defendant Blue Cross and Blue Shield of South Carolina.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

This the 13th day of August, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ Chad D. Hansen

Chad D. Hansen (NC Bar No. 32713)
1001 West Fourth Street
Winston-Salem, NC 27101-2400
chadhansen@ktslaw.com
Telephone: 336-607-7300
Facsimile: 336-607-7500

*Attorneys for Defendant Blue Cross and Blue Shield of South Carolina.*